Ori S. Blumenfeld (Bar No. 259112)
**Wilson & Associates LLP**
10940 Wilshire Blvd., Suite 1600
Los Angeles, CA 90401
Phone: (310) 220-4900
Facsimile: (310) 443-4296
oblumenfeld@wilsonassocllp.com

Proposed Attorneys for DEBTOR
 (Application for employment pending Court's Approval)


UNITED STATES BANKRUPCTY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION


| | |
|---|---|
| In re: | Case No.: 2:10-bk-21336-AA |
| ORANGE GROVE SERVICE, INC, | Chapter 11 |
| Debtor. | DEBTOR ORANGE GROVE SERVICE, INC.'S NOTICE OF MOTION AND MOTION FOR AUTHORITY FOR INTERIM USE OF CASH COLLATERAL PURSUANT TO TITLE 11 U.S.C §362(C)(2)(B) COMMENCING IMMEDIATELY AND CONTINUING FOR SEVEN (7) MONTHS OR UNTIL CONFIRMATION OF DEBTOR'S PLAN OF REORGANIZATION, WHICHEVER IS SOONER |

   Comes now ORANGE GROVE SERVIE, INC., debtor in possession, (the "Debtor"), by and through its attorney, moves the Court pursuant to 11 U.S.C. §363(c)(2) and Bankruptcy Rules 4001(b) and 9014 for entry of orders authorizing the Debtor's interim use of cash collateral and providing adequate protection to secured creditors Signal Walnut Partnership, LP, ("SWP"), American Continental Bank ("ACB")  and Phoebe

DEBTOR ORANGE GROVE SERVICE, INC.'S NOTICE OF MOTION AND MOTION FOR AUTHORITY FOR INTERIM USE OF CASH COLLATERAL
PURSUANT TO TITLE 11 U.S.C §362(C)(2)(B) COMMENCING IMMEDIATELY AND CONTINUING FOR SEVEN (7) MONTHS OR UNTIL
CONFIRMATION OF DEBTOR'S PLAN OF REORGANIZATION, WHICHEVER IS SOONER

1

Chen Huang and Nelson L. Huang ("Huang") and as grounds therefore states as follows:

1.      Debtor filed its petition under Chapter 11 of Title 11 of the United States Code on March 25, 2010.

2.      Debtor is in the business of operating two (2) "strip" shopping centers (collectively, the "Centers"), located at 308-388 Lemon Ave., Walnut, CA 91789 ("Lemon Creek)" and 2120-2150 Alhambra, CA 91803 ("Fremont") The rental income from the commercial tenants in the Centers provides all of Debtor's income.

3.      The sole owner of Debtor is Arturo Flores.  The owner's draw from the net rental income (gross rents less all operating costs, real estate taxes, property insurance and debt service, from the revenue generated by the Centers is Mr. Flores' sole source of personal income he needs to pay reasonable and necessary living expenses for himself and his family.

4.      Mr. Flores is also the President of Debtor and owns 100% interest of the Debtor. His wife Diana Flores is the Secretary of the Debtor.  Together, prepetition on a regular basis have devoted over 90% of their working time to the operations and business development of the Centers and owner's draws from the Centers provide 100% of Mr. Flores' personal income.  Currently they devote almost 100% of their time to the management and business development of Debtor to tasks and projects that, when implemented, will directly increase the revenues from the Centers and which tasks and projects will be important components to Debtor's Plan of Reorganization.

5.      SWP claims a first priority security interest in Lemon Creek.  The original principal amount of Debtor's note dated December 5, 2006, to SWP was $7,080,000. Debtor believes the current legitimate value of SWP's claim, before any set-off that may

DEBTOR ORANGE GROVE SERVICE, INC.'S NOTICE OF MOTION AND MOTION FOR AUTHORITY FOR INTERIM USE OF CASH COLLATERAL
PURSUANT TO TITLE 11 U.S.C §362(C)(2)(B) COMMENCING IMMEDIATELY AND CONTINUING FOR SEVEN (7) MONTHS OR UNTIL
CONFIRMATION OF DEBTOR'S PLAN OF REORGANIZATION, WHICHEVER IS SOONER

2

occur from causes of action that Debtor plans to bring against SWP and its managing

partner as adversarial actions in this case, is $7,161,450.

6.    ACB claims a first priority security interest in Fremont.  The original principal

amount of Debtor's note dated November 23, 2007, to ACB was $3,475,000.  Debtor

believes the current legitimate value of ACB's claim is $3,388,363.

7.    Huang claims a second priority security interest in Fremont.  The original

principal amount of Debtor's note dated October 14, 2009, to Huang was $275,000.

Debtor believes the current legitimate value of Huang's claim is $308,000.

8.    There are real estate taxes past due and owing for the Fremont in the total

amount of $140,906.54.  Of that amount, $75,389.53 is on the Defaulted Tax Roll,

$34,318.43 is for the first installment of 2009 and $31,198.58 is for the second

installment of 2009.  The proposed budget, attached hereto as Exhibit A (the "Budget"),

includes a monthly payment of $2,348, which will pay off these taxes in five (5) years,

the term that Debtor anticipates its Plan of Reorganization to be.  The Budget also

includes a monthly accrual in the amount of $5,200 in order to accrue funds to pay the

first installment of 2010 real estate taxes due in October, 2010, in the approximate

amount of $31,198.58.  Attached hereto as Exhibit B is a copy of the Property Tax

Payment Inquiry from the Los Angeles County Treasurer and Tax Collector's website for

the tax parcels of Fremont.

9.    There are past due real estate taxes for Lemon Creek due and owing for the

second installment for 2009, in the total amount of $77,212.52.  The Budget includes a

monthly payment of $1,287, which will pay off these taxes in five (5) years, the term that

Debtor anticipates its Plan of Reorganization to be.  The Budget also includes a monthly

accrual in the amount of $12,868.75 in order to accrue funds to pay the first installment

of 2010 real estate taxes due in October, 2010, in the approximate amount of

$77,212.52.  Attached hereto as Exhibit C is a copy of the Property Tax Payment

DEBTOR ORANGE GROVE SERVICE, INC.'S NOTICE OF MOTION AND MOTION FOR AUTHORITY FOR INTERIM USE OF CASH COLLATERAL
PURSUANT TO TITLE 11 U.S.C §362(C)(2)(B) COMMENCING IMMEDIATELY AND CONTINUING FOR SEVEN (7) MONTHS OR UNTIL
CONFIRMATION OF DEBTOR'S PLAN OF REORGANIZATION, WHICHEVER IS SOONER

3

Inquiry from the Los Angeles County Treasurer and Tax Collector's website for the tax parcels of Lemon Creek.

10.

11.    Proceeds from the Centers in the form of rents and profits ("Rents") may constitute cash collateral within the meaning of that term under 11 U.S.C.A. § 363 (a). Debtor has no source of income from the Centers other than from the rents and Common Area Maintenance charges ("CAM").

12.    Currently, the gross rents and CAM's for Lemon Creek are $65,117 per month. Gross rents and CAM's for Fremont are $17,600 per month; however, as of May, 2010, gross rents and CAM's for Fremont will increase to $23,377 per month as a result of rent start in May, 2010, for a new tenant.

13.    SWP claims rights to the Rents from Lemon Creek under an assignment of rents in a note and deed of trust executed prior to the filing of the Debtor's petition.

14.    ACB claims rights to the Rents from Fremont under an assignment of rents in a note and deed of trust executed prior to the filing of the Debtor's petition.

15.    Huang claims rights to the Rents from Fremont under an assignment of rents in a note and deed of trust executed prior to the filing of the Debtor's petition.

16.    In accordance with the requirements of 11 U.S.C. § 363(c)(4) the rents and profits collected by the Debtor have been segregated into separate Debtor in possession bank accounts, one for Lemon Creek and one for Fremont.

17.    The Debtor plans to continue operation of the Centers throughout its Chapter 11 case and will propose a Plan of Reorganization that will be feasible, fair and equitable and provide for the continued operation of Debtor's Centers.

18.    In order to pay necessary operating expenses, maintain and preserve the values of the Centers, Debtor must use cash collateral in which SWP, ACB and Huang have an interest. The Debtor proposes to use cash collateral on an interim basis until the sooner

DEBTOR ORANGE GROVE SERVICE, INC.'S NOTICE OF MOTION AND MOTION FOR AUTHORITY FOR INTERIM USE OF CASH COLLATERAL
PURSUANT TO TITLE 11 U.S.C §362(C)(2)(B) COMMENCING IMMEDIATELY AND CONTINUING FOR SEVEN (7) MONTHS OR UNTIL
CONFIRMATION OF DEBTOR'S PLAN OF REORGANIZATION, WHICHEVER IS SOONER

4

of November 1, 2010, or until such time as Debtor's Plan of Reorganization has been confirmed, pursuant to the budgets for Lemon Creek and Fremont which are included in the Budget.  During the period of Debtor's interim use of cash collateral, the Debtor proposes to meet the Budget, subject to reasonable deviation, not to exceed 10%.

19.     Based on past operating reports prepared by Debtor's management company prepetition, STC Management, the proposed Budget reflects a realistic current and projected analysis of the Debtor's income and expenses through October 30, 2010.  The Budget will be used as monthly operating budgets for the Centers, subject to reasonable deviations, not to exceed 10%.  The Budget provides that during the period of interim use of cash collateral and cash, Debtor expects to generate total revenue from rental income and CAM generated by the Centers of $613,681, with total operating expenses of $413,438 not including payments to secured creditors, but including owner draws of $129,500.  The Budget also provides for debt service payments to secured creditors of $136,899.

20.     SWP is over-secured in Lemon Creek.  SWP is adequately protected based on the average of the values stated as "Sales Range"  as set forth on page 5 of the Marketing Position and Pricing Analysis for Lemon Creek Village Walnut, CA, dated April 2, 2010, ("the MPPA LC"), attached hereto as Exhibit D, prepared by Richard Longobardo, Associate Vice President Investments and Associate Director, National Retail Group (See Resume/Curriculum Vitae, attached hereto as Exhibit E), sets forth a range of values, the average of which is $8,728,710 (see Declaration of Richard Longobardo regarding Lemon Creek, attached hereto as Exhibit F), leaving equity in the amount of $1,567,260 above the estimate of the legitimate value of SWP's claim, before any set-off as referred to in Paragraph 4 above, which leaves SWP with an "equity cushion" of 17.96%.  Under the Budget, Debtor proposes to pay SWP monthly interest at annual rate of 3.25%, based on *Till v. SCS Credit Corporation*, 541 U.S. 465 (2004)

DEBTOR ORANGE GROVE SERVICE, INC.'S NOTICE OF MOTION AND MOTION FOR AUTHORITY FOR INTERIM USE OF CASH COLLATERAL
PURSUANT TO TITLE 11 U.S.C §362(C)(2)(B) COMMENCING IMMEDIATELY AND CONTINUING FOR SEVEN (7) MONTHS OR UNTIL
CONFIRMATION OF DEBTOR'S PLAN OF REORGANIZATION, WHICHEVER IS SOONER

5

*("Till")*.  In Till, a Chapter 13 debtor's proposed debt adjustment Plan provides each

allowed, secured creditor both a lien securing the claim and a promise of future property

disbursements whose total value, as of the plan's date, "is not less than the [claim's]

allowed amount," 11 U. S. C. §1325(a)(5)(B)(ii).   The Plan provide for installment

payments, each installment must be calibrated to ensure that the creditor receives

disbursements whose total present value equals or exceeds that of the allowed claim.

The Plan's  proposed debt adjustment plan provides the amount that would be

distributed to creditors each month and that petitioners would pay an annual interest

rate on respondent's secured claim using the prime-plus formula rate proposed under

*Till v. SCS Credit Corporation*, 541 U.S. 465 (2004) ("*Till*"). This "prime"/"prime-plus" or

"formula rate" is reached by augmenting the national prime rate to account for the

nonpayment risk posed by a particular Debtor's' financial position that includes an

evaluation of the lender's "equity cushion".  In this case, SWP has an equity cushion of

at least over 15% and the Budget proposes to pay the SWP interest at the current prime

rate.  According to the Wall Street Journal the Prime Rate on April 9, 2009, was 3.25%.

21.    Notwithstanding that ACB is currently under-secured in Fremont, however, there

is sufficient cash flow to pay ACB interest at the current contract rate of 3.5%.  The

average of the sales range values set forth in the Marketing Position and Pricing

Analysis for Fremont Center, Alhambra, CA, dated April 2, 2010, (the MPPA Fremont"),

attached hereto as Exhibit G, prepared by Richard Longobardo, Associate Vice

President Investments and Associate Director, National Retail Group, is $2,979,367

(see Declaration of Richard Longobardo regarding Fremont, attached hereto as Exhibit

H).  In the Budget, Debtor proposes to pay ACB monthly interest at the current contract

rate of 3.5%

22.    Huang is currently under-secured in Fremont based on the current average of the

sales range values set forth in the MPPA Fremont , Alhambra, CA, dated April 2, 2010,

however in order to provide current adequate protection to Huang, the Budget includes monthly interest at the rate of 3.25%, less than the current contract rate of 12%. Debtor believes is the legitimate value of Huang's claim is $308,000.

23.     The reason that the value of Fremont is currently low is that the MPPA Fremont uses the income approach as the basis for valuation. Fremont has total gross leasable area of 14,885 square feet, as set forth on page 4 of the MPPA Fremont. Currently, 6,630 square feet are vacant as a result of three (3) tenants leaving recently. At least two (2) of these former tenants owe back rent and CAM and Debtor plans to pursue collections for such rents via adversarial proceedings. The result is that 44.54% of Fremont is currently vacant. The president of the Debtor, Mr. Flores is currently working with one potential tenant who may take approximately 6,200 square of the vacant space. If Mr. Flores is successful in leasing this space, he anticipates that additional rental income and CAM of approximately $14,000 per month will be generated from that lease. This will result in a substantial increase to the FMV of Fremont.

24.     In order to provide adequate protection to the secured creditors for the Debtor's use of cash collateral, the Debtor proposes the following:

A. Debtor will continue to maintain adequate causality and liability insurance coverage on Lemon Creek and Fremont such that the properties are insured against potential losses to the limits recommended by the Debtor's insurance representative;

B. Debtor will make monthly interest payments to the secured creditors as set forth in the Budget;

C. Debtor will provide the secured creditors with copies of the Monthly Operating Reports it files in this case and with the United States Trustee's Office;

D. Upon written request made by a secured creditor, Debtor will provide more detailed monthly operating statements;

DEBTOR ORANGE GROVE SERVICE, INC.'S NOTICE OF MOTION AND MOTION FOR AUTHORITY FOR INTERIM USE OF CASH COLLATERAL
PURSUANT TO TITLE 11 U.S.C §362(C)(2)(B) COMMENCING IMMEDIATELY AND CONTINUING FOR SEVEN (7) MONTHS OR UNTIL
CONFIRMATION OF DEBTOR'S PLAN OF REORGANIZATION, WHICHEVER IS SOONER

7

E.  The Debtor will only expend cash collateral pursuant to the Budget subject to

    reasonable fluctuations, not to exceed 10%;

F.  The Debtor will pay post petition real estate taxes for the year 2010; and

G.  The Debtor will maintain Lemon Creek and Fremont in good condition and repair.


25.     Due to the nature of the Debtor's business as the owner/landlord of commercial retail rental properties, it is critical to the continuation of Debtor's business that the interim use of cash collateral and cash be authorized as set forth in the Budget.

26.     Pursuant to 11 U.S.C. §552(b), based on the equities of this case, Debtor should be authorized to use cash collateral and cash from its rental income to operate its business.

27.     Approval of the Debtor's use of cash collateral and cash in accordance with this Motion and pursuant to the Budget is in the best interest of the Debtor, creditors and the estate as it will allow the Debtor to continue its business of operating the Centers.

28.     In support of this Motion is the Declaration of Arturo Flores, attached hereto as Exhibit I.


WHEREFORE, the Debtor prays that the Court make and enter an Order authorizing the Debtor's use of cash collateral in accordance with this Motion and the Budget until November 1, 2010, and authorize the Debtor to provide adequate protection to the secured creditors as set forth in such Budget and for such other and further relief as to the Court may appear proper.


DATED: APRIL 13, 2010        WILSON & ASSOCIATES LLP

                          By: /s/ Ori S. Blumenfeld

                          Ori S. Blumenfeld

DEBTOR ORANGE GROVE SERVICE, INC.'S NOTICE OF MOTION AND MOTION FOR AUTHORITY FOR INTERIM USE OF CASH COLLATERAL
PURSUANT TO TITLE 11 U.S.C §362(C)(2)(B) COMMENCING IMMEDIATELY AND CONTINUING FOR SEVEN (7) MONTHS OR UNTIL
CONFIRMATION OF DEBTOR'S PLAN OF REORGANIZATION, WHICHEVER IS SOONER

8

1

Proposed Attorney for Debtor

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEBTOR ORANGE GROVE SERVICE, INC.'S NOTICE OF MOTION AND MOTION FOR AUTHORITY FOR INTERIM USE OF CASH COLLATERAL
PURSUANT TO TITLE 11 U.S.C §362(C)(2)(B) COMMENCING IMMEDIATELY AND CONTINUING FOR SEVEN (7) MONTHS OR UNTIL
CONFIRMATION OF DEBTOR'S PLAN OF REORGANIZATION, WHICHEVER IS SOONER

9