Ori S. Blumenfeld (Bar No. 259112)
**Wilson & Associates LLP**
10940 Wilshire Blvd., Suite 1600
Los Angeles, CA 90024
Phone: (310) 220-4900
Facsimile: (310) 443-4296
oblumenfeld@wilsonassocllp.com

Attorneys for DEBTOR

UNITED STATES BANKRUPCTY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>ORANGE GROVE SERVICE, INC.,<br><br>Debtor. | Case No. 2:10-bk-21336-AA<br><br>Chapter 11<br><br>**DEBTOR'S REPLY TO SIGNAL WALNUT LP'S OBJECTION TO DEBTOR'S NOTICE OF SETTING INSIDER COMPENSATION** |

TO THE HONORABLE ALAN M. AHART, UNITED STATES BANKRUPTCY JUDGE FOR THE CENTRAL DISTRICT OF CALIFORNIA, THE UNITED STATES TRUSTEE, SIGNAL WALNUT PARTNERSIP, LP, OTHER SECURED CREDITORS, THEIR ATTORNEYS AND ALL PARTIES IN INTEREST.

ORANGE GROVE SERVICE, INC., debtor in possession, (the "Debtor"), by and through its attorney, hereby responds to Signal Walnut Partnership LP's ("SWP") Objection to Debtor's Notice of Setting Insider Compensation and states as follows:

1

Debtor filed its petition under Chapter 11 of Title 11 of the United States Code on March 25, 2010.

Debtor is in the business of operating two (2) "strip" shopping centers (collectively, the "Centers"), located at 308-388 Lemon Ave., Walnut, CA 91789 ("Lemon Creek)" and 2120-2150 Fremont Avenue, Alhambra, CA 91803 ("Fremont") The rental income from the commercial tenants in the Centers provides all of Debtor's income (See Declaration of Arturo Flores, attached hereto as Exhibit "A").

Debtor has segregated its funds in cash collateral accounts. On March 31, 2010, Debtor opened two "DIP" checking accounts at City National Bank, one for Lemon Creek income and expenses and one for Fremont income and expenses. The rents for each respective center are and will be deposited into these accounts and the expenses for each center will be paid from that center's account. As of May 4, 2010, the balance in the Lemon Creek account was $53,624.11 and the balance in the Fremont account was $25,945.83, (includes an initial deposit of $5,048.98). Debtor has only made use of the cash collateral to pay past due vendor, utility, insurance, and trustee bills as ordered by the Court. (See Declaration of Arturo Flores, attached hereto as Exhibit "A").

The sole owner of Debtor is its President, Arturo Flores. Mr. Flores' wife, Diana Flores, is the Secretary of Debtor. Both Mr. Flores and Mrs. Flores (collectively "Officers") have, since the filing of Debtor's Petition, and thereafter have continued to devote almost all of their working time to the operation and management of Debtor. The Owner's Draw proposed in Debtor's initial Budget, attached to Debtor's Motion for Interim Use of Cash Collateral as Exhibit A, has been revised to be salaries for the President and Secretary and is set forth as such in a Second Amended Exhibit A (the "Budget"), a copy of which is attached hereto as Exhibit "B". Net rental income (gross

rents less all operating costs, real estate taxes, property insurance and debt service, from the revenue generated by the Centers is Mr. and Mrs. Flores' sole source of personal income he needs to pay reasonable and necessary living expenses for himself and his family.

Mr. Flores is the sole stockholder, owner and President of Debtor. Mr. Flores' wife, Diana Flores, is the Secretary of the Debtor. Prepetition, Mr. and Mrs. Flores devoted over 90% of their working time to the operations and business development of the Centers. Over approximately the past two years, a portion of the revenues from the Centers has provided 100% of Mr. Flores' personal income. Currently Mr. and Mrs. Flores are devoting almost 100% of their working time to the management and business development of Debtor and to tasks and projects that, when implemented, will not only result in increased revenues from the Centers, but will also be important components to Debtor's Plan of Reorganization. (See Declaration of Arturo Flores, attached hereto as Exhibit "A"). Should this Court not approve Officers' salaries, since Officer's have no other source of personal income and cannot seek other sources of income since they are dealing full time with the management and operation of Debtor, Officers may well be put in the unfortunate position of having to seriously consider filing a personal chapter 7. Officers will most likely lose their home and their health insurance as well. Mrs. Flores relies very heavily on her health insurance since she is recovering from a very serious cancer and is currently in remission. As such, she will not be able to replace her existing health insurance.

Contrary to SWP's allegation that Mr. Flores is asking to use cash collateral for his personal use, Debtor is asking that Mr. Flores and Mrs. Flores be fairly compensated from income, and equity of the property as employees of Debtor for the time they spend working to manage and operate Debtor. Nobody, not even SWP and

its managing partner Joseph Kung ("Kung"), should expect anyone to work for free. In fact, SWP and Kung come to this Court with unclean hands in asking this Court to deny Debtor's Motion to use cash collateral to operate its business.  Some of Mr. and Mrs. Flores' recent work has been as a direct and proximate result of Kung's blatant and continued violations of the Automatic Stay and wrongful interference and with tenants, telling them not to pay rent, attempting thereby to undermine the very cash flow he asks this Court to deny Debtor's use of in order to operate and manage Debtor and to pay the operating expenses of Lemon Creek.  Apparently Kung is and been on a mission to undermine Debtor's ability to collect rents from its tenants.  (See copy of Cease and Desist letter dated March 31, 2010 from Debtor's counsel to Joseph T, attached hereto as Exhibit "C".   Also, see the Declarations of Linda Argumosa of Argumosa Insurance for Farmer's Insurance Company, Syun Sook Yang, part owner of Aloha Island Barbeque, Charles Kim and Sandy Chor, manager of Doughnut Tree, all tenants in the Lemon Creek Center, attached hereto as Exhibit "D", stating that after Debtor filed its Chapter 11 Petition, Kung personally came to ask them not to pay rent to Debtor.

Apparently SWP and Kung believe that they know the facts of Mr. Flores' life better than he.  Talk about making unsupported, irrelevant and misleading statements, it first should be noted that Debtor is a subchapter "S" corporation and as such owner's draws and salaries are legal and proper.  Post-petition, Debtor has elected to pay salaries to Mr. and Mrs. Flores for the work they do on behalf of the Debtor.  Do SWP and Kung expect Debtor and Lemon Creek to run themselves?

The Centers are the sole income producing assets of Debtor and the sole source of income to Mr. and Mrs. Flores. See Declaration of Arturo Flores attached hereto as Exhibit A.  In order for Debtor to reorganize, Debtor must continue to operate and participate in the management of the Centers.  Therefore it is likely that after notice and

hearing on a motion for final use of cash collateral, the Court will allow Debtor to use such cash collateral to continue to operate its business until Debtor's Plan of Reorganization has been confirmed.

Debtor's proposed final budget will include management fees for the professional management of the Centers in addition to Officer's salaries to operate and manage the Debtor. Prior to the filing of Debtor's Petition, Debtor employed STC Management ("STC") as the professional property manager to manage the Centers. STC has agreed to manage the Centers going forward, subject, of course, to the Court's approval. STC will manage the operations of the Centers only and **NOT** the business of the Debtor. Debtor has filed an Application to Employ STC to manage the Centers that is set to be heard by this Court on June 9, 2010. The management fees set forth in Debtor's budget will be paid to STC, *not* to Debtor or Mr. Flores personally. (See Declaration of Arturo Flores, attached hereto as Exhibit "A").

The amounts for auto loans set forth in the Budget shows amounts for two auto loans for vehicles owned by Debtor. These loans were made by Debtor prepetition, and are obligations of the Debtor. The loan for the remaining third vehicle has been removed from the Budget because that vehicle is rarely used for Debtor's business. The loans for all three vehicles are liabilities of Debtor and the lenders are secured lenders, included in the Debtor's schedules. Notwithstanding this, the amounts of the loan payments for the two vehicles that will be included in the budget with the motion for final use of cash collateral, have been revised to reflect the percentage of use of each vehicle for Debtor's Business purposes. (See Declaration of Arturo Flores, attached hereto as Exhibit "A").

This Court entered an Order on May 22, 2010, based on stipulations reached with SWP and ACB, to pay the immediate past due vendor invoices and utility bills for both centers. Debtor will file a motion seeking final use of cash collateral.

SWP attempts to paint a false picture of the duties of Debtor's Officers. In Debtor's Notice Setting Insider Compensation, Debtor stated that its Officers are not only participating in the management of the two centers but also for all of the operations of Debtor. This job description entails much more than just managing the Centers day to day operation. It entails seeking out, marketing and finding potential new tenants and ways to raise additional capital in addition to other complex duties. See attached Exhibit A to the Declaration of Arturo Flores, a true and correct copy of Arturo and Diana Flores' Job Description and Exhibit B to the Declaration of Arturo Flores, postpetition calendar of hours worked. Dealing with tenant issues which were created and caused by Kung. In addition, should this Court approve third party STC's employment application, Debtor's Officers would still manage STC's operations in addition to the day to day operations of Debtor's business operations. Officers of Debtors are not requesting merely a property management fee, but compensation for running and managing the Debtor. STC keeps financial records for the centers, but all other management tasks are performed at the direction of Mr. Flores who is responsible for the day to day operation of both centers. STC, if employed, will be the property manager. Officers are necessary to any corporation. Someone has to manage the business and in a Chapter 11, the management of Debtor must be by Debtor's principals and officers. Debtor is requesting salary compensation that accurately reflects the size of the company and the work that is required to keep the company running efficiently. In fact Debtor believes that its Officers are entitled to their salaries as well as the management fees for the months leading to the approval of STC as they have been performing property management duties in addition to overseeing operations of the Debtor. Up until the filing of Debtor's

**DEBTOR'S REPLY TO SIGNAL WALNUT LP'S OBJECTION TO DEBTOR'S NOTICE OF SETTING INSIDER COMPENSATION**

bankruptcy Debtor's principals were taking compensation as officers of the company, this is nothing new. The Debtor has to be managed and coordinated regardless of whether it is in bankruptcy or not and Officers should be entitled to a salary similar to that received prepetition. Officers should not have to work for free to perform work necessary to reorganize the Debtor.

In *In re: Tucson Properties Corporation, an Arizona corporation, Debtor*, No. 94-01564 TUC JMM, Chapter 11, 193 B.R. 292; 1995 Bankr. LEXIS 1996, 1995, the Debtor was an Arizona corporation that owned and operated commercial real property including a retail shopping center. The shareholder was a closely held revocable family trust of the Debtor that owned 100% shares. The court approved the salary request to Debtor's president, the president's wife, as well as two other family members of the president. In the instant matter, Debtor is also a closely held corporation, where the president owns 100% shares and is seeking salaries for Mr. and Mrs. Flores, the president as well as his wife, the secretary, respectively.

In *In re: JRV Industries, Inc., d/b/a BRC Performance, Debtor*, case number 04-6236-3FI, 344 B.R. 679; 2006 Bankr. LEXIS 1222, 2006, the Debtor's sole shareholder and president of the Debtor did not take a salary, which suggested desperate measures to ensure the survival of the company.  In JRV, the court was of the opinion that debtor could not emerge from this process (reorganization) in a solvent condition and with reasonable prospects of financial stability and success. Here, Debtor is a solvent corporation, has ample amounts of rents flowing from both of the centers and even more coming from the Lemon Creek center, the focus of SWP's objection. Therefore Debtor's Officers should be entitled to the salary requested.

**DEBTOR'S REPLY  TO SIGNAL WALNUT LP'S OBJECTION TO DEBTOR'S NOTICE OF SETTING INSIDER COMPENSATION**

SWP would like for this Court to believe that the salary requested is exorbitant because Debtor's Officers are doing nothing more than managing the centers. That is categorically not the case. Debtor is the Cam manager. Officers must also handle Vons as well as other parcels in the Lemon Creek center in addition to their other complex and complicated duties. SWP believes that Officers salary is tantamount to them taking out equity from Debtor. Allowing Officers salary compensation is not the same as removing equity from the Debtor, this is money that comes out of the cash flow from the rents, not from Debtor's asset. Equity is defined as what a property is worth and what the owner owes against that property.  Salaries are expenses and expenses are paid from cash flow. Here, the salary is a line item expense that has been budgeted to pay Officers for the work that they do on behalf of the Debtor.

SWP, counsel for SWP, and SWP's principle Joseph Kung believed that a property manager is only entitled to an amount equal to 3-6% of said revenue. Kung must have forgotten that when he owned Lemon Creek and managed the property as well that he had a 10% administration fee built in to tenants expenses. Attached hereto as Exhibit E, is a true and correct copy of emails from Kung to Cindy Tang of Coldwell banker that shows charges incurred by Vons including a 10% administration fee that Kung took when he owned Lemon Creek and managed the center. Why should Kung be allowed to suggest that Officers take less salary for doing even more work than Kung did when he managed the center?

**DEBTOR'S REPLY  TO SIGNAL WALNUT LP'S OBJECTION TO DEBTOR'S NOTICE OF SETTING INSIDER COMPENSATION**

WHEREFORE, the Debtor prays that the Court DENY Signal Walnut Partnership LP's Objection and make and enter an Order authorizing the Debtors' Officers use of insider compensation and further relief as to the Court may appear proper.

Dated: May 27, 2010               Respectfully Submitted

                                  Wilson & Associates LLP


                                  By:/s/ Ori S. Blumenfeld_____
                                  Ori S. Blumenfeld, Attorneys for Debtor

**DEBTOR'S REPLY TO SIGNAL WALNUT LP'S OBJECTION TO DEBTOR'S NOTICE OF SETTING INSIDER COMPENSATION**