Ori S. Blumenfeld (Bar No. 259112)
**Wilson & Associates LLP**
10940 Wilshire Blvd., Suite 1600
Los Angeles, CA 90024
Phone: (310) 220-4900
Facsimile: (310) 443-4296
oblumenfeld@wilsonassocllp.com

Attorneys for DEBTOR

# UNITED STATES BANKRUPCTY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br><br><br><br><br>ORANGE GROVE SERVICE, INC,<br><br><br>Debtor. | Case No.: 2:10-bk-21336-AA<br><br>Chapter 11<br><br>**DEBTOR ORANGE GROVE SERVICE, INC.'S AND SECURED CREDITOR AMERICAN CONTINENTAL BANK'S NOTICE OF MOTION AND MOTION REQUESTING AN ORDER APPROVING STIPULATION BETWEEN DEBTOR AND AMERICAN CONTINENTAL BANK AUTHORIZING USE OF CASH COLLATERAL RE 2120 SOUTH FREMONT AVENUE, ALHAMBRA, CA 91803**<br><br>**Date: July 14, 2010**<br><br>**Time 10:00 a.m.**<br><br>**Courtroom: 1375**<br>**255 E. Temple Street**<br>**Los Angeles, CA 90012** |

DEBTOR ORANGE GROVE SERVICE, INC.'S AND SECURED CREDITOR AMERICAN CONTINENTAL BANK'S
NOTICE OF MOTION AND MOTION REQUESTING AN ORDER APPROVING STIPULATION BETWEEN
DEBTOR AND AMERICAN CONTINENTAL BANK AUTHORIZING USE OF CASH COLLATERAL RE 2120
SOUTH FREMONT AVENUE, ALHAMBRA, CA 91803

1

1      TO THE HONORABLE ALAN M. AHART, UNITES STATES BANKRUPTCY

2 JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, 20 LARGEST

3 UNSECURED CREDITORS, SECURED CREDITORS, PARTIES REQUESTING

4 SPECIAL NOTICE, AND ALL OTHER PARTIES IN INTEREST,

5

6     **PLEASE TAKE NOTICE** that a hearing will be held on July 14, 2009, at 10:00

7 a.m. in Courtroom 1375, 255 E. Temple Street, Los Angeles, CA 90012, or such sooner

8 time as the Court may fix, before the Honorable Alan M. Ahart, United States

9 Bankruptcy Judge, to consider Debtor Orange Grove Service, Inc.'s And Secured

10 Creditor American Continental Bank's ("ACB") Notice of Motion and Motion Requesting

11 an Order Approving a Stipulation dated July _2_, 2010, Between Debtor And American

12 Continental Bank Authorizing Use Of Cash Collateral (the "Motion"), filed by Debtor and

13

14 Debtors in Possession, Orange Grove Service, Inc. ("Debtor"), in the above-referenced,

15 Chapter 11 bankruptcy case. By way of the Motion, the Debtor seeks authority to use

16 cash collateral in accordance with the Stipulation for Use of Cash Collateral (the

17 "Stipulation"), which is attached as Exhibit "A" hereto. In support of the Motion, the

18 attached hereto and submitted herewith are the Declarations of Arturo Florez, President

19 and sole stockholder of Debtor (Exhibit "B"), and of Ori S. Blumenfeld, Debtor's attorney

20 of record (Exhibit "C"). Debtor makes the Motion pursuant to 11 U.S.C. § 363, Rules

21 4001-2 and 9013-1 of the Local Bankruptcy Rules of the United States Bankruptcy

22 Court for the Central District of California (the "Local Rules"), and Rules 4001 and 9014

23 of the *Federal Rules of Bankruptcy Procedure* (the "Bankruptcy Rules").

24

25

26

27

28

**PLEASE TAKE FURTHER NOTICE** that the Notice and Motion have been served on the parties as specified in Bankruptcy Rule 4001(d)(1)(C) and Local Rule 9013-1(d). pursuant to Bankruptcy Rule 4001(d)(2) and Local Rule 9013-1(f), any opposition, joinder, or response to the Motion must be filed and served on the Debtor, ACB and the United States Trustee not later than fifteen (15) days before the date of the date of the mailing of notice, unless this Court fixes a different time. Furthermore, pursuant to Local Rule 9013-1(h), papers not timely filed and served may be deemed by the court to be consent to the granting of the Motion.

**PLEASE TAKE FURTHER NOTICE** that on May 20, 2010, the Court entered an Order Approving Limited Use of Cash Collateral to Pay Debtors Immediate Past Due Bills re Insurance, Utilities, Vendors, and US Trustee Fees Pursuant to Oral Stipulations.  However, that Order was insufficient for the Debtors to continue operations and engage in a meaningful reorganization. The Debtors require the continued use of cash collateral and thus bring this Motion for that end.

The salient terms of the Stipulation are described in court-approved form F4001-2, as required by Local rule 4001-2(d), which is being filed immediately after this Motion.

DATED: JULY 2, 2010                 WILSON & ASSOCIATES LLP

                                    By: /s/ Ori S. Blumenfeld

                                    Ori S. Blumenfeld

                                    Attorney for Debtor

---

DEBTOR ORANGE GROVE SERVICE, INC.'S AND SECURED CREDITOR AMERICAN CONTINENTAL BANK'S
NOTICE OF MOTION AND MOTION REQUESTING  AN ORDER APPROVING STIPULATION BETWEEN
DEBTOR AND AMERICAN CONTINENTAL BANK AUTHORIZING USE OF CASH COLLATERAL RE 2120
SOUTH FREMONT AVENUE, ALHAMBRA, CA 91803

# EXHIBIT A

**STIPULATION BETWEEN DEBTOR AND AMERICAN CONTINENTAL BANK AUTHORIZING USE OF CASH COLLATERAL**

EDWARD G. SCHLOSS CA Bar No. 102858
3637 Motor Avenue, Suite 220
Los Angeles, California 90034
Tel: (310) 733-4488 Fax: (310) 836-4888
B23107/nc

Attorney for Secured Creditor
AMERICAN CONTINENTAL BANK

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 2:10-bk-21336-AA |
| ORANGE GROVE SERVICE, INC., | Chapter 11 |
| Debtor. | **STIPULATION BETWEEN DEBTOR AND AMERICAN CONTINENTAL BANK AUTHORIZING USE OF CASH COLLATERAL RE 2120 SOUTH FREMONT AVENUE, ALHAMBRA, CA 91803** |

This Stipulation is made by and between Orange Grove Service, Inc., a California corporation, debtor and debtor-in-possession herein (the "Debtor") and American Continental Bank ("Lender"), secured creditor. Debtor and Lender shall sometimes be referred to herein as the "Parties". Debtor and Lender hereby stipulate and agree as follows:

## RECITALS

1.    Debtor owns and operates the Fremont Shopping Center located in Alhambra, California (the "Property"). Lender holds a promissory note (the "Note") evidencing a $3,475,000.00 loan (the "Loan") from Lender to Debtor. To secure repayment of the Note, Debtor executed a Deed of Trust and Assignment of Rents

1  encumbering the Property and all proceeds, products and rents generated by the Property

2  in favor of Lender (the "Deed of Trust"). The Note, the Deed of Trust, and all other

3  documents memorializing the Loan shall be referred to herein as the "Loan Documents."

4      2.    Without prejudice to the rights of any other party (but subject to the

5  limitations set forth in paragraph q of this Stipulation), the Debtor admits that pursuant to

6  the Loan Documents, repayment of the Note is secured by valid, enforceable, duly

7  perfected first priority liens and security interests in the Property and in any and all

8  proceeds, products and rents generated by the Property (the "Cash Collateral," and

9  together with the Property, the "Collateral").

10      3.    On March 25, 2010 the ("Petition Date"), the Debtor filed Chapter 11.

11      4.    The Cash Collateral, wherever located, whether existing before or after the

12  Petition Date, constitutes Lender's cash collateral within the meaning of section 363(a) of

13  the Bankruptcy Code.

14      5.    Without prejudice to the rights of any other party (but subject to the

15  limitations set forth in paragraph q of this Stipulation), the Debtor admits that as of the

16  Petition Date, in accordance with the terms of the Loan Documents, Debtor is indebted to

17  Lender in the approximate amount of $3,388,663.00 (the "Pre-petition Obligation").[1]

18  Debtor desires to continue to operate the Property, collect the rental income, other revenue

19  and expense reimbursements from tenants and occupants of the Property (collectively, the

20  "Income") and to utilize the Income to pay expenses related to the operation, preservation

21  and maintenance of the Property. Lender consents to Debtor's use of its Cash Collateral

22  on the terms and conditions set forth herein.

23      6.    Except as otherwise provided herein, the terms of this Stipulation shall be

24  valid and binding upon Debtor, all successors in interest to the Debtor, all creditors of

25

26  [1]    Debtor and Lender have not yet reconciled the exact amount owed as of the Petition Date and thus the

27  amount set forth above is a minimum estimate only for purposes of this Stipulation, and does not include all amounts owed to Lender including but not limited to certain late charges, penalties, additional interest, attorney's fees and

28  other costs incurred by Lender. Lender does not waive its right to such amounts above $3,388,663.00 and Debtor does not waive its right to an accounting.

1    Debtor, any statutory committee appointed in these cases and all other parties in interest

2    from and after the Petition Date.

3        NOW, THEREFORE, Debtor and Lender hereby agree as follows:

4                    **STIPULATION**

5      a.      The foregoing recitals are incorporated herein by reference.

6      b.      Debtor and Lender agree that pursuant to the Loan Documents, all Income

7    constitutes Lender's "cash collateral" under Section 363(a) of the Bankruptcy Code.

8      c.      This Stipulation shall be in effect until the earlier of September 30, 2010

9    (subject to extensions as agreed upon in writing between Lender and Debtor pursuant to

10    paragraph t below), or the Termination Date (as "Termination Date" is defined

11    hereinbelow at paragraph t).

12      d.      Debtor shall collect all Cash Collateral generated by the Property. The Cash

13    Collateral shall be deposited into a segregated and separate debtor-in-possession cash

14    collateral account at City National Bank (the "CNB Account"). Debtor shall at all times

15    keep a record of all credits and debits to the CNB Account and be able to account for all

16    funds in the CNB Account.

17      e.      During the term of this Stipulation, Debtor may use Cash Collateral

18    collected from the Property to pay expenses directly related to the operation, preservation

19    and maintenance of the Property *only pursuant to this Stipulation* in amounts not to

20    exceed the line item expenses, with a permitted deviation not to exceed 10% without prior

21    notice to and approval by Lender (except for (1) legal fees and insider compensation,

22    which shall not be exceeded, and (2) utilities, which may be paid at the actual amount

23    owed up to a 20% deviation from the budgeted amount), as provided in the budget

24    attached hereto as Exhibit "1" (the "Budget," and each expense therein, an "Approved

25    Expense"). Upon prior written notice to Lender, Debtor may request that Lender approve

26    any amounts which exceed the budgeted amount for any line item monthly Approved

27    Expense by more than 10% of the amount budgeted for that monthly expense. Lender

28    may approve or disapprove such expenditure in its sole and absolute discretion. In no

1    event shall Cash Collateral be used to prosecute claims, bring actions, or file motions

2    against Lender.

3        f.    Debtor shall provide Lender with monthly reports no later than 20 days after

4    month end, including a current rent roll, and a line-item by line-item comparison of

5    budgeted to actual receipts of Cash Collateral and incurrence and payment of Approved

6    Expenses for the prior month.

7        g.    Lender shall retain a perfected continuing lien on all Income generated by

8    the Property to the extent provided for in the Loan Documents.

9        h.    All liens, mortgages and security interests granted pursuant to this

10    Stipulation shall be deemed effective, valid and perfected as of the date of entry of this

11    Stipulation, without the necessity of the filing or lodging of any documents or other

12    instruments otherwise required to be filed or lodged under applicable non-bankruptcy law

13    for the perfection of liens, mortgages or security interests.

14        i.    The Parties agree that post-petition interest under the Loan Documents shall

15    continue to accrue, in the manner set forth in the Loan Documents.  As adequate

16    protection of Lender's interests in its Collateral, and Debtor's use of same, Debtor shall

17    make the following payments:  (i) interest payments of $9,884 per month on the Pre-

18    petition Obligation representing an annual rate of 3.5% for the months of June, July,

19    August and September (the "Monthly Interest Payments"), as set forth in the Budget, and

20    (ii) catch up payments totaling $21,744.80 representing interest on the Pre-petition

21    Obligation at a 3.5% annual rate for the time period from the Petition Date until May 31,

22    2010 (the "Catch-up Payment").   The timing of the Monthly Interest Payments and the

23    Catch-Up Payment is as follows:  (1) Immediately upon entry of the Court order

24    approving this Stipulation, the Debtor shall make the June Monthly Payment of $9,884

25    and the first Catch-up Payment of $9,884.00; (2) each subsequent Monthly Payment shall

26    be made thereafter on July 15, 2010, August 15, 2010 and September 15, 2010, and each

27    subsequent Catch-up Payment of $2,372.16 shall be made in 5 equal monthly installments

28    beginning on July 15, 2010.  In addition, Lender agrees that Debtor may pay $2,000.00 to

4        CASH COLLATERAL STIPULATION

1   Diana and Arturo Flores, the Debtor's insiders, related to a management fee for the

2   approximate first 2 months of this bankruptcy case (allocated for payment $1,000.00 in

3   June and $1,000.00 in July as set forth on the budget). This payment totaling $2,000.00

4   is separate from the $3,500.00 monthly payment to the insiders as described in paragraph

5   x hereof.

6        j.      Nothing in this Stipulation shall be construed as a modification of the Loan

7   Documents and nothing herein shall alter the rate at which interest accrues under the Loan

8   Documents.

9        k.      The interest payments shall be distributed to Lender, free and clear of any

10   claim, charge, assessment or liability including, without limitation, any such claim or

11   charge arising out of or based on, directly or indirectly, Sections 506(c) or 552(b) of the

12   Bankruptcy Code. The automatic stay contained in Bankruptcy Code Section 362 is

13   hereby modified to permit Lender to receive and apply the payments described in this

14   Stipulation, to the extent applicable.

15       l.      Debtor shall pay all post-petition property taxes with respect to the Property

16   when they come due, beginning with the real estate taxes due in October, 2010, and shall

17   reserve on a monthly basis the amounts set forth in the Budget representing the pro rata

18   amount of such property taxes. Debtor shall also maintain insurance as required by the

19   Loan Documents, and comply with all other requirements of the Loan Documents that are

20   necessary to preserve and maintain the value of Lender's liens and security interests in the

21   Property.

22       m.      Except as permitted by this Stipulation, Debtor shall not use, lease, sell or

23   expend directly or indirectly the Collateral or any proceeds, product or rents thereof

24   without prior written consent of Lender; however, except for the expenditure of Cash

25   Collateral, this provision shall in no way prohibit the Debtor from operating its business in

26   the normal course without the requirement of any consent from Lender.

27       n.      Except as otherwise agreed to in writing by Lender, during the term of this

28   Stipulation, Debtor shall be enjoined and prohibited from granting any mortgages,

5        CASH COLLATERAL STIPULATION

1   security interests or liens, including liens created under Section 364(d) of the Bankruptcy

2   Code, which are senior to or on a parity with Lender's pre-petition security interests or

3   liens in the Collateral.

4       o.    Notwithstanding any other provision contained herein, Debtor's

5   authorization to use Lender's Cash Collateral pursuant to this Stipulation shall terminate

6   immediately and automatically, without any obligation of Lender to provide notice to

7   Debtor, upon the occurrence of any of the of the following:

8           i)    Entry of an order by the Bankruptcy Court converting or dismissing

9               Debtor's bankruptcy case;

10          ii)    Entry of an order by the Bankruptcy Court appointing a Chapter 11

11              Trustee in Debtor's bankruptcy case;

12          iii)    The reversal, vacatur, stay, amendment, supplementation or other

13              modification of this Stipulation (without Lender's consent) in a

14              manner which shall, in the sole opinion of Lender, materially and

15              adversely affect the rights of Lender hereunder, or shall materially

16              and adversely affect the priority of any or all of Lender's collateral or

17              security interests;

18          iv)    The filing by Debtor of a motion or commencement of an action by

19              Debtor pursuant to paragraph (q) of this Stipulation;

20          v)    Entry of an order granting Lender relief from the automatic stay; or

21          vi)    The Filing of any motion by Debtor to obtain DIP financing without

22              the consent of Lender.

23      p.    Absent an agreement, in writing, between Lender and Debtor, Debtor's

24  authorization to use Lender's Cash Collateral shall terminate automatically upon the end

25  of the third business day after receipt of notice from Lender, and failure to cure by Debtor

26  within such notice period, of the earliest to occur of any of the following events of default:

27          i)    Non-compliance by Debtor with any of the express terms or

28              provisions of this Stipulation;

CASH COLLATERAL STIPULATION

ii)    Any person or entity obtains an order permitting the use of Bank's
Cash Collateral without Lender's express written consent. For
purposes of this sub-paragraph, Debtor agrees during the term of this
Stipulation that it will not support any action which could result in (a)
expenditures materially different than as set forth in the Budget or (b)
seek or support the "surcharge" or similar rights against Lender
pursuant to Bankruptcy Code Section 506(c);

iii)    Debtor knowingly furnishes or knowingly makes any false,
inaccurate or materially incomplete representation, warranty,
certificate, report or summary in connection with or pursuant to this
Stipulation.

The date of termination upon any event as set forth in this paragraph (p) or the previous
paragraph (o), shall be referred to in this Stipulation as the "Termination Date."

q.    Debtor and other parties in interest, other than the Official Committee of
Unsecured Creditors, if any, shall have one hundred and ten (110) days from the date of
entry of an order approving the Stipulation: (i) to challenge the accuracy of any of the
contentions contained in Recitals 1 through 7, inclusive, of this Stipulation; or (ii) to bring
any avoidance claims under Bankruptcy Code Sections 544, 545, 547, 548, 549, 550, and
similar provisions of the Bankruptcy Code as to Lender's liens, claims and collateral.  All
Official Committees shall have sixty (60) days from entry of the order of appointment of
the Official Committee, if any, to: (i) challenge the accuracy of any of the contentions
contained in Recitals 1 through 7, inclusive, of this Stipulation; or (ii) bring any avoidance
claims under Bankruptcy Code Sections 544, 545, 547, 548, 549, 550, and similar
provisions of the Bankruptcy Code as to Lender's liens, claims and collateral.  If Debtor,
an Official Committee and/or any other party in interest does not challenge the accuracy
of the contentions contained in Recitals 1 through 7, inclusive, by the deadlines set forth
in this paragraph, then (a) the Pre-petition Obligation shall constitute an allowed claim in
at least the amount set forth in recital 5 of this Stipulation for all purposes in the Chapter

7                CASH COLLATERAL STIPULATION

1   11 Case and any subsequent Chapter 7 case, (b) Lender's security interest and lien on the

2   Collateral shall be deemed legal, valid, binding, perfected and otherwise unavoidable,

3   (c) the Pre-petition Obligation in at least the amounts forth in recital 5 of this Stipulation[2]

4   and Lender's security interest and lien on the Collateral shall not be subject to

5   subordination, avoidance or any other or further challenge by any party in interest seeking

6   to exercise the rights of the Debtor's estate, including, without limitation, any successor

7   thereto, and (d) as a result of the foregoing, the repayment of any post-petition interest in

8   accordance with the terms of this Stipulation shall constitute an indefeasible payment and

9   shall be final and binding for all purposes.  The foregoing provision does not limit or

10  impair the right of Lender to include additional sums not included in the $3,388,663.00

11  estimate or the right of Debtor to demand an accounting of all sums claimed due and

12  owing by Lender, whether owing pre-petition or post-petition.

13          r.      Neither the entry of an order approving this Stipulation nor the acceptance

14  of the interest payments shall constitute, or be deemed to be, a waiver of any of Lender's

15  rights or claims under the Loan Documents or applicable law, or a cure of any default by

16  Debtor under the Loan Documents.

17          s.      Except as otherwise set forth herein, both Lender and Debtor reserve all

18  rights that each may have with respect to the Property and Cash Collateral in this

19  Chapter 11 proceeding.  Lender expressly reserves all right to seek, and Debtor expressly

20  reserves all rights to object to, relief from or modification of the automatic stay,

21  appointment of a trustee, dismissal or conversion of the case, or any other remedies that it

22  may have.

23          t.      No waiver, modification, or amendment of any of the provisions hereof shall

24  be effective unless it is set forth in writing, signed by the parties hereto and approved by

25  this Court, except that Debtor shall have the right to (i) use Cash Collateral for purposes

26

27  [2] Neither this provision nor any other provision of this Stipulation is intended as a waiver of Lender's right to have its
    claim allowed in an amount greater than the Pre-Petition Obligation nor Debtor's right to challenge such additional

28  amounts, consistent with footnote 1 hereto.  This provision does establish a minimum for such allowed claim if not
    challenged by the deadline set forth in this provision.

8               CASH COLLATERAL STIPULATION

1    not specified in the Budget as consented to by Lender in writing, and (ii) operate the

2    Property pursuant to the terms of this Stipulation after expiration of the Budget, only if

3    Lender consents to an additional Budget in writing, without further order of the Court.

4         u.    Notwithstanding any termination of Debtor's authority to use the Cash

5    Collateral pursuant to the terms hereof, all liens to the extent of allowed claims, priorities,

6    rights and remedies provided to Lender in this Stipulation shall survive such termination

7    and remain in full force and effect with respect to any Pre-petition Obligation, any claims

8    and obligations arising under this Stipulation, outstanding on such termination date and

9    any fees incurred by Lender after termination of this Stipulation in enforcing its rights

10    under this Stipulation, provided Lender is entitled to such fees under the Bankruptcy

11    Code.

12         v.    The provisions of this Stipulation and any actions taken pursuant hereto

13    shall survive entry of any order converting the Chapter 11 case to a Chapter 7, and

14    Lender's claims, liens to the extent of allowed claims and security interests granted and

15    payments made pursuant to this Stipulation and the Loan Documents shall continue in full

16    force and effect and shall not be disgorged to or recaptured by the bankruptcy estate or the

17    Debtor notwithstanding the entry of any such order or an order dismissing the Chapter 11

18    case.

19         w.    Notwithstanding any stay, modification, vacation, or reversal of this

20    Stipulation, any indebtedness, obligation or liability incurred by Debtor pursuant to this

21    Stipulation arising prior to the later of the effective date of such stay, modification,

22    vacation or reversal, or Lender's receipt of notice thereof, shall be governed in all respects

23    by the original provisions of this Stipulation, and Lender shall continue to be entitled to all

24    of the rights, remedies, privileges and benefits, including any payments authorized herein

25    and all security interests, liens and priorities granted herein, with respect to all such

26    indebtedness, obligations or liabilities incurred or existing prior to such date, and with

27    respect to Debtor's use of the Cash Collateral prior to such date. Without limiting the

28    generality of the foregoing, in the event this Court or any other court hereafter modifies

9              CASH COLLATERAL STIPULATION

1  any of the provisions of this Stipulation, such modifications shall not affect the rights,

2  remedies, liens and priorities of Lender granted or acknowledged pursuant to this

3  Stipulation with respect to the Pre-petition Obligation and any Cash Collateral which is

4  used prior to any such modifications.

5      x.    For the term of this Stipulation, Lender consents to Debtor's payment of

6  insider compensation and payments to Arturo Flores and Diana Flores up to the amount

7  set forth in the Budget as follows:  Debtor may pay in the aggregate up to $3,500.00 per

8  month beginning in the month of June to Arturo and Diana Flores; however, any such

9  payments may only be made after all other monthly payments have been made (including

10 payments to Lender) or accrued and accounted for pursuant to the Budget.

11     y.    For the term of this Stipulation, Debtor shall continue to provide documents

12 as set forth in the Court's May 20, 2010 Order regarding interim use of cash collateral.

13     z.    Upon entry of an order approving this Stipulation, the provisions hereof

14 shall be immediately binding upon and inure to the benefit of Lender, Debtor and their

15 respective successors and assigns, including any trustee or other fiduciary hereafter

16 appointed in the Chapter 11 Case or in any superseding Chapter 7 case as a legal

17 representative of Debtor or Debtor's estate.

18     aa.   No rights are intended to be created hereunder for the benefit of any third

19 party or creditor or any direct or indirect incidental beneficiary except as specifically

20 provided herein.

21     bb.   Lender has entered into this Stipulation and consented to the use of the Cash

22 Collateral in good faith and is entitled to all of the protections provided to such an entity.

23     cc.   All notices required to or permitted to be given to Debtor under this

24 Stipulation shall be addressed as follows:

25     To:     Orange Grove Service, Inc.
           P.O. Box 7398
26         La Verne, CA 91750
           Attn: Arturo Flores
27         Fax No.: _____

28         and

                    10           CASH COLLATERAL STIPULATION

Copy:      Wilson & Associates LLP
           10940 Wilshire Blvd., Suite 1600
           Los Angeles, CA 90024
           Attn: Ori S. Blumenfeld, Esq.
           Fax No.: (310) 443-4296

All notices required to or permitted to be given to Lender under this Stipulation shall be addressed as follows:

To:        American Continental Bank
           17700 Castleton Street, Suite 100
           City of Industry, CA 91748 Walnut CA 91789555
           Attn: Sandy Yang
           Fax No.: (626) 363-8980

           and

Copy:      Edward G. Schloss Law Corp.
           3637 Motor Avenue, Suite 220
           Los Angeles, CA  90023
           Attn: Edward G. Schloss, Esq.
           Facsimile: (310) 836-4888

The above addresses may be changed effective upon receipt of a new address.  Any notice required herein or permitted to be given shall be in writing and be personally served or sent by facsimile (upon confirmation of receipt) or United States mail and shall be deemed given when sent or, if mailed, when deposited in the United States mail so long as it is properly addressed.  All notices and reports required hereunder shall also be sent to counsel for any official committee.

    dd.    The Bankruptcy Court shall retain exclusive jurisdiction over the subject matter of this Stipulation in order to resolve any dispute in connection with the rights and duties specified hereunder.

    ee.    Except as otherwise expressly provided in this Stipulation, the terms and conditions of the Loan Documents shall remain in full force and effect and Lender shall have all of its rights and remedies thereunder, subject to the provisions of Bankruptcy Code and any orders of this Court.

    ff.    This Stipulation may be executed in original or facsimile signature and in counterpart copies, and this Stipulation shall be deemed fully executed and effective when

11                    CASH COLLATERAL STIPULATION

1    all parties have executed and possess a counterpart, even if no single counterpart contains

2    all signatures.

3       IT IS SO STIPULATED:

4

5    DATED: July 2, 2010                    AMERICAN CONTINENTAL BANK

6

7                                           By:
                                            Its: President and CEO

8

9    DATED: July 2, 2010                    ORANGE GROVE SERVICE, INC.

10

11                                          By:
                                            Its: CEO President

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                            12          CASH COLLATERAL STIPULATION

Approved as to Form and Content:

DATED: July 2, 2010                           EDWARD G. SCHLOSS


By: _____
    Edward G. Schloss (SBN 102858)
    Attorney for American Continental Bank


DATED: July 2, 2010                           WILSON & ASSOCIATES LLP


By: _____
    ORI S. BLUMENFELD (SBN 259112)
    Attorneys for Debtor and Debtor-in-
    Possession

13                CASH COLLATERAL STIPULATION

**EXHIBIT "1"**

**Budget**

Exhibit 1
FREMONT CENTER

Budget Sources

|  | | Jun | Jul | Aug | Sep |
|---|---|---|---|---|---|
| 1 | REVENUES (SOURCES) | | | | |
| 2 | | | | | |
| 3 | | | | | |
| 4 | | | | | |
| 5 | | | | | |
| 6 | Rent Income | | | | |
| 7 | Retail Rents | 19,925 | 20,544 | 20,765 | 20,765 |
| 8 | Misc Prepaid Rent | - | - | - | - |
| 9 | Total Rent Income | 19,925 | 20,544 | 20,765 | 20,765 |
| 10 | | | | | |
| 11 | | | | | |
| 12 | Expense Income | | | | |
| 13 | Tenant CAM/NNN | 2,699 | 3,217 | 3,217 | 3,217 |
| 14 | Prior Year CAM/NNN | - | - | - | - |
| 15 | Total Expense Income | 2,699 | 3,217 | 3,217 | 3,217 |
| 16 | | | | | |
| 17 | | | | | |
| 18 | Other Revenue | | | | |
| 19 | Past Due Rent (Current Tenants) | 17,879 | | | |
| 20 | Past Due Rent (Prior Tenants) | 1,490 | 1,490 | 1,490 | 1,490 |
| 21 | Late Fees | - | - | - | - |
| 22 | NSF Fees | - | - | - | - |
| 23 | Damage & Cleaning Fees | - | - | - | - |
| 24 | Pay Phone Income | - | - | - | - |
| 25 | Total Other Revenue | 1,490 | 1,490 | 1,490 | 1,490 |
| 26 | | | | | |
| 27 | | | | | |
| 28 | TOTAL REVENUES (SOURCES) | 23,514 | 25,251 | 25,472 | 25,472 |

Exhibit 1
FREMONT CENTER

| | | Budget Uses | | | |
|---|---|---|---|---|---|
| | | _Jun_ | _Jul_ | _Aug_ | _Sep_ |
| 29 | | | | | |
| 30 | EXPENSES [USES] | | | | |
| 31 | | | | | |
| 32 | | | | | |
| 33 | CENTER-SPECIFIC EXPENSES | | | | |
| 34 | Utility Expenses | | | | |
| 35 | Electric Common Area | 150 | 150 | 150 | 150 |
| 36 | Water & Sewer Common Area | 425 | 425 | 425 | 425 |
| 37 | Trash Removal | 246 | 246 | 246 | 246 |
| 38 | Back Flow Test | | | | |
| 39 | Total Utility Expenses | 821 | 821 | 821 | 821 |
| 40 | | | | | |
| 41 | Repairs & Maintenance | | | | |
| 42 | Exterior Building | | | | |
| 43 | General Repairs & Maintenance | | | | |
| 44 | Electrical Lighting | | | | |
| 45 | Pest Control | | | | |
| 46 | R&M Contract Services | | | | |
| 47 | Total General Repairs & Maintenance | 500 | 500 | 500 | 500 |
| 48 | Total Repairs & Maintenance | 500 | 500 | 500 | 500 |
| 49 | Equipment | | | | |
| 50 | Parking Lot | 168 | 168 | 168 | 168 |
| 51 | Parking Lot Cleaning | | | | |
| 52 | Parking Lot Repairs | | | | |
| 53 | Total Parking Lot | | | | |
| 54 | Landscaping & Grounds | | | | |
| 55 | Landscape Contracting | | | | |
| 56 | Total Landscaping & Grounds | 430 | 430 | 430 | 430 |
| 57 | Management Fee | 430 | 430 | 430 | 430 |
| 58 | Property Insurance | 1,000 | 1,000 | 1,000 | 1,000 |
| 59 | Property Taxes (accrual) | 480 | 480 | 480 | 480 |
| 60 | Property Tax Arrearage | 6,240 | 6,240 | 6,240 | 6,240 |
| 61 | Appraisal Fee (Estimated) | 1,964 | 1,964 | 1,964 | 1,964 |
| 62 | | 1,250 | 1,250 | 1,250 | 1,250 |
| 63 | TOTAL CENTER-SPECIFIC EXPENSES | 12,853 | 12,853 | 12,853 | 12,853 |
| 64 | DEBTOR'S ADMINISTRATIVE EXPENSES    [Pro-rata | | | | |
| 65 | share (or Fremont 28.55%) | | | | |
| 66 | Legal ($10,500) | 3,002 | 3,002 | 3,002 | 3,002 |
| 67 | Catch-up Legal | 1,001 | 1,001 | 1,001 | 1,001 |
| 68 | US Trustee Fees ($650/quarter) | 62 | 62 | 62 | 62 |
| 69 | Catch-up US Trustee Fees due 7/15 | 93 | 93 | | |
| 70 | Total Debtor's Administrative Expenses | 4,157 | 4,157 | 4,065 | 4,065 |
| 71 | | | | | |
| 72 | DEBT SERVICE TO ACB | | | | |
| 73 | Monthly Debt Service | 9,884 | 9,884 | 9,884 | 9,884 |
| 74 | Cash-up Debt Service ($21,744.80) - paid as an initial payment of $9,884 upon entry of order by the court approving the stipulation and five subsequent monthly payments of $2372.16. [Note: Budget numbers are rounded to the nearest dollar] | 21,744.80 | | | |
| 75 | DEBTOR'S OFFICERS' SALARIES | | | | |
| 76 | Maximum per Agreement | | | | |
| 77 | Catch-up payments | | | | |
| 78 | | | | | |
| 79 | Total Debtor's Officers' Salaries/Payments | | | | |
| 80 | | | | | |
| 81 | OPERATING EXPENSES (excludes DEBT SERVICE) [USES] | 21,510 | 21,510 | 20,437 | 20,437 |

Exhibit 1

**FREMONT CENTER**

Budget Cash Flow

|  | Jun | Jul | Aug | Sep |
|---|---|---|---|---|
| 86 BEGINNING CASH RESERVES | 54,340 | 84,576 | 28,060 | 20,859 |
| 87 MONTHLY REVENUES | 23,514 | 25,251 | 25,472 | 25,472 |
| 88 TOTAL CASH AVAILABLE | 77,854 | 61,827 | 53,532 | 45,931 |
| 90 MONTHLY REVENUES (FROM LINE 87) | 23,514 | 25,251 | 25,472 | 25,472 |
| 91 LESS MONTHLY OPERATING EXPENSES | 21,510 | 21,510 | 20,417 | 20,417 |
| 92 NET OPERATING INCOME (NOI) | 2,004 | 3,741 | 5,055 | 5,055 |
| 93 LESS DEBT SERVICE TO ACB | 19,768 | 12,256 | 12,256 | 12,256 |
| 94 NET CASH FLOW | (17,764) | (8,515) | (7,201) | (7,201) |
| 95 NET CASH FLOW | 17,764 | 8,515 | 7,201 | 7,201 |
| 96 Allocation of Cash Reserves to Operations |  |  |  |  |
| 97 CUMULATIVE CASH FLOW | 54,340 | 84,576 | 28,060 | 20,859 |
|  | 84,576 | 28,060 | 20,859 | 13,658 |

Page 7

Budget Assumptions



100 Exhibit 1
101 FREMONT CENTER
102
103
104 Assumptions
105
106 Property Taxes Due 11/10 to be paid per accrual          $31,198.53
107 Monthly Accrual over 5 months                                  $6,240
108
109 Rent Due Taxes
110 $77,198 plus penalties @ 1.17149%/mo

| | Balance | Penalty |
|---|---|---|
| 111 | $ 77,198 | 904.37 |

112
113
114 3st Mortgage

| | Rate | Balance | Payment |
|---|---|---|---|
| 115 Initial Payment | 3.50% | 3,368,663 | 9,884 |

Upon the entry of order by the court approving the stipulation
116 Subsequent payments due          15th of the month
117
118
119 2nd Mortgage (Ewing) is fully unsecured

| | Rate | Balance | Payment |
|---|---|---|---|
| 120 No Monthly Payment Required | | 306,000 - unsecured | |

121
122
123

| | | | Jun | Jul | Aug | Sep |
|---|---|---|---|---|---|---|
| 1 | Exhibit 1 | | | Combined Budget | | |
| 2 | COMBINED PROPERTY CASH FLOW SUMMARY | | | | | |
| 3 | | | | | | |
| 4 | | | | | | |
| 5 | LEMON CREEK CENTER | | | | | |
| 6 | TOTAL REVENUES (SOURCES) | | 74,014 | 75,745 | 77,478 | 77,478 |
| 7 | CENTER-SPECIFIC EXPENSES | | 29,259 | 29,229 | 29,529 | 29,229 |
| 8 | DEBTOR'S ADMINISTRATIVE EXPENSES (Pro-rata) | | 9,759 | 9,759 | 9,527 | 9,527 |
| 9 | DEBTOR'S OFFICERS' SALARIES (Pro-rata) | | 9,000 | 9,000 | 6,500 | 6,500 |
| 10 | OPERATING EXPENSES (excludes DEBT SERVICE) (USES) | | 54,518 | 54,488 | 52,056 | 51,756 |
| 11 | BEGINNING CASH RESERVES | 142,322 | 142,322 | 107,818 | 95,629 | 87,606 |
| 12 | LESS NET OPERATING INCOME (NOI) | | 19,496 | 21,257 | 25,422 | 25,722 |
| 13 | LESS DEBT SERVICE TO SWP | | 27,000 | 27,000 | 27,000 | 27,000 |
| 14 | NET CASH FLOW | | (34,504) | (12,189) | (8,023) | (7,723) |
| 15 | Allocation of Cash Reserves to Operations | | 34,504 | 12,189 | 8,023 | 7,723 |
| 16 | CUMULATIVE CASH FLOW | | 107,818 | 95,629 | 87,606 | 79,882 |
| 17 | | | | | | |
| 18 | | | | | | |
| 19 | | | Jun | Jul | Aug | Sep |
| 20 | FREMONT CENTER | | | | | |
| 21 | TOTAL REVENUES (SOURCES) | | 23,514 | 25,251 | 25,472 | 25,472 |
| 22 | CENTER-SPECIFIC EXPENSES | | 12,853 | 12,853 | 12,853 | 12,853 |
| 23 | DEBTOR'S ADMINISTRATIVE EXPENSES (Pro-rata) | | 4,157 | 4,157 | 4,065 | 4,065 |
| 24 | DEBTOR'S OFFICERS' SALARIES (Pro-rata) | | 4,500 | 4,500 | 3,500 | 3,500 |
| 25 | OPERATING EXPENSES (excludes DEBT SERVICE) (USES) | | 21,510 | 21,510 | 20,417 | 20,417 |
| 26 | BEGINNING CASH RESERVES | 54,340 | 54,340 | 36,576 | 28,060 | 20,859 |
| 27 | LESS NET OPERATING INCOME (NOI) | | 2,004 | 3,741 | 5,055 | 5,055 |
| 28 | LESS DEBT SERVICE TO ACB | | 19,768 | 12,256 | 12,256 | 12,256 |
| 29 | NET CASH FLOW | | (17,764) | (8,515) | (7,201) | (7,201) |
| 30 | Allocation of Cash Reserves to Operations | | 17,764 | 8,515 | 7,201 | 7,201 |
| 31 | CUMULATIVE CASH FLOW | | 36,576 | 28,060 | 20,859 | 13,658 |
| 32 | | | | | | |
| 33 | | | | | | |
| 34 | | | Jun | Jul | Aug | Sep |
| 35 | COMBINED | | | | | |
| 36 | TOTAL REVENUES (SOURCES) | | 97,528 | 100,996 | 102,950 | 102,950 |
| 37 | CENTER-SPECIFIC EXPENSES | | 42,112 | 42,082 | 42,382 | 42,082 |
| 38 | DEBTOR'S ADMINISTRATIVE EXPENSES | | 13,917 | 13,917 | 13,592 | 13,592 |
| 39 | DEBTOR'S OFFICERS' SALARIES | | 13,500 | 13,500 | 10,000 | 10,000 |
| 40 | OPERATING EXPENSES (excludes DEBT SERVICE) (USES) | | 76,029 | 75,999 | 72,474 | 72,174 |
| 41 | Beginning Cash Reserves | 196,662 | 196,662 | 144,393 | 123,689 | 108,465 |
| 42 | LESS NET OPERATING INCOME (NOI) | | 21,499 | 24,997 | 30,476 | 30,776 |
| 43 | TOTAL DEBT SERVICE | | 46,768 | 39,256 | 39,256 | 39,256 |
| 44 | NET CASH FLOW | | (52,269) | (20,704) | (15,225) | (14,925) |
| 45 | Allocation of Cash Reserves to Operations | | 52,269 | 20,704 | 15,225 | 14,925 |
| 46 | CUMULATIVE CASH FLOW | | 144,393 | 123,689 | 108,465 | 93,540 |
| 47 | | | | | | |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 1900 Avenue of the Stars, 21st Floor, Los Angeles, California 90067.

A true and correct copy of the foregoing document described **STIPULATION BETWEEN DEBTOR AND AMERICAN CONTINENTAL BANK** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On _____ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☐ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL(indicate method for each person or entity served):**
On _____ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL (indicate method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____ I caused to be served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____     _____     _____
Date                        Type Name                   Signature

S:\\SIS\Stipulations\LA11ABC.orangegrove.cashcollateral.STIP.doc

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                **F 9013-3.1**

# EXHIBIT B

## DECLARATION OF ARTURO FLORES IN SUPPORT OF DEBTOR

## ORANGE GROVE SERVICE, INC.'S AND SECURED CREDITOR

## AMERICAN CONTINENTAL BANK'S NOTICE OF MOTION AND

## MOTION REQUESTING THE APPROVAL OF A STIPULATION

## BETWEEN DEBTOR AND AMERICAN CONTINENTAL BANK

## AUTHORIZING USE OF CASH COLLATERAL

Ori S. Blumenfeld (Bar No. 259112)
**Wilson & Associates LLP**
10940 Wilshire Blvd., Suite 1600
Los Angeles, CA 90024
Phone: (310) 220-4900
Facsimile: (310) 443-4296

Attorneys for Debtor and Debtor in Possession
Orange Grove Service, Inc.

UNITED STATES BANKRUPCTY COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 2:10-bk-21336-AA |
| ORANGE GROVE SERVICE, INC., | Chapter 11 |
| Debtor. | **DECLARATION OF ARTURO FLORES IN SUPPORT OF DEBTOR ORANGE GROVE SERVICE, INC.'S AND SECURED CREDITOR AMERICAN CONTINENTAL NOTICE OF MOTION AND MOTION REQUESTING AN ORDER APPROVING STIPULATION BETWEEN DEBTOR AND AMERICAN CONTINENTAL BANK AUTHORIZING USE OF CASH COLLATERAL RE 2120 SOUTH FREMONT AVENUE, ALHAMBRA, CA 91803** |

Declarant, Arturo Flores, President of Debtor respectfully states as follows:

1) I am the President of Debtor in the above referenced case.

2) Debtor filed a Chapter 11 Voluntary Petition on March 25, 2010.  Debtor now

asks this Court to grant the motion requesting an order approving the stipulation

for use of cash collateral in order to make payments that are necessary for

1

DECLARATION OF ARTURO FLORES IN SUPPORT OF DEBTOR ORANGE GROVE SERVICE, INC.'S AND
SECURED CREDITOR AMERICAN CONTINENTAL NOTICE OF MOTION AND MOTION REQUESTING  AN
ORDER APPROVING STIPULATION BETWEEN DEBTOR AND AMERICAN CONTINENTAL BANK
AUTHORIZING USE OF CASH COLLATERAL RE 2120 SOUTH FREMONT AVENUE, ALHAMBRA, CA 91803

operating expenses, and maintain and preserve the value of Debtor's real

property at the Fremont Center ("Property").

3) It has taken Debtor and  Secured Creditor American Continental Bank ("ACB")

almost two (2) weeks to reach an agreement for use of cash collateral. Debtor

now needs to have this Motion heard on an expedited basis for the below

reasons:

4) Debtor has entered into a stipulation with ACB for the use of cash collateral.

   a.  Certain bills need to be paid immediately. Utility bills and vendor bills are now

      due and must be paid immediately in order to avoid possible interruption of

      utility services and other maintenance necessary for the operation and

      maintenance of the Property.

   b.  Payments for vehicles and insurance for such vehicles are past due and

      must be paid immediately.

   c.  Debtor must pay past due debt service payments to ACB.

   d.  STC, has been employed by this Court as property manager on May 20,

      2010, and officer salaries must be paid.

5) Approving the stipulation will allow Debtor to maintain Fremont and to pay its cost

of operations.

6) This Declaration is given to establish a *prima facie* basis for the granting of the

underlying Application.

DECLARATION OF ARTURO FLORES IN SUPPORT OF DEBTOR ORANGE GROVE SERVICE, INC.'S AND
SECURED CREDITOR AMERICAN CONTINENTAL NOTICE OF MOTION AND MOTION REQUESTING  AN
ORDER APPROVING STIPULATION BETWEEN DEBTOR AND AMERICAN CONTINENTAL BANK
AUTHORIZING USE OF CASH COLLATERAL RE 2120 SOUTH FREMONT AVENUE, ALHAMBRA, CA 91803

I declare under penalty of perjury under the laws of the United State of America that to the best of my knowledge the above is true and correct and that this Declaration was executed on the date set forth below.

Dated: July 2, 2010

By:/s/ Arturo Flores

Arturo Flores, Declarant

DECLARATION OF ARTURO FLORES IN SUPPORT OF DEBTOR ORANGE GROVE SERVICE, INC.'S AND SECURED CREDITOR AMERICAN CONTINENTAL NOTICE OF MOTION AND MOTION REQUESTING  AN ORDER APPROVING STIPULATION BETWEEN DEBTOR AND AMERICAN CONTINENTAL BANK AUTHORIZING USE OF CASH COLLATERAL RE 2120 SOUTH FREMONT AVENUE, ALHAMBRA, CA 91803

# EXHIBIT C

**DECLARATION OF ORI S. BLUMENFELD IN SUPPORT OF DEBTOR
ORANGE GROVE SERVICE, INC.'S AND SECURED CREDITOR
AMERICAN CONTINENTAL BANK'S NOTICE OF MOTION AND
MOTION REQUESTING THE APPROVAL OF A STIPULATION
BETWEEN DEBTOR AND AMERICAN CONTINENTAL BANK
AUTHORIZING USE OF CASH COLLATERAL**

Ori S. Blumenfeld (Bar No. 259112)
**Wilson & Associates LLP**
10940 Wilshire Blvd., Suite 1600
Los Angeles, CA 90024
Phone: (310) 220-4900
Facsimile: (310) 443-4296

Attorneys for Debtor and Debtor in Possession
Orange Grove Service, Inc.

UNITED STATES BANKRUPCTY COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Case No. 2:10-bk-21336-AA |
| ORANGE GROVE SERVICE, INC., | ) Chapter 11 |
| | ) **DECLARATION OF ORI S.** |
| | ) **BLUMENFELD IN SUPPORT OF** |
| | ) **DEBTOR ORANGE GROVE SERVICE,** |
| Debtor. | ) **INC.'S AND SECURED CREDITOR** |
| | ) **AMERICAN CONTINENTAL BANK'S** |
| | ) **NOTICE OF MOTION AND MOTION** |
| | ) **REQUESTING  AN ORDER APPROVING** |
| | ) **STIPULATION BETWEEN DEBTOR AND** |
| | ) **AMERICAN CONTINENTAL BANK** |
| | ) **AUTHORIZING USE OF CASH** |
| | ) **COLLATERAL RE 2120 SOUTH** |
| | ) **FREMONT AVENUE, ALHAMBRA, CA** |
| | ) **91803** |

Declarant, Ori S. Blumenfeld, Counsel for Debtor respectfully
states as follows:

1.    I am an attorney, admitted to practice in the State of
California and in this Court.

2.    I practice law with the firm of Wilson & Associates LLP. The law firm maintains its California office for the practice of law at 10940 Wilshire Blvd., Suite 1600, Los Angeles, CA 90024.

3.    My office has been working diligently for the past few weeks in order to reach agreements via stipulations with secured creditors Signal Walnut Partnership, LP ("SWP") and American Continental Bank ("ACB") for Debtor to use cash collateral. Our office has finalized terms of the agreements as well as budgets prior to the hearing on interim use of cash collateral and insider compensation on June 30, 2010.

4.    On July 2, 2010 Debtor finalized a stipulation with ACB for use of cash collateral.

5.    At the hearing on June 30, 2010 regarding use of cash collateral and insider compensation, Counselors for both secured creditors SWP and ACB, as well as myself, agreed to request that this Court expedite a hearing on the Motion requesting Approval of the Stipulation.

I declare under penalty of perjury under the laws of the United State of America that to the best of my knowledge the above is true and correct and that this Declaration was executed on the date set forth below.

Dated: July 2, 2010                    Respectfully Submitted,

2

1

2                                    WILSON & ASSOCIATES LLP

3                              By: /s/ Ori S. Blumenfeld

4                                      Ori S. Blumenfeld, Declarant

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                            3

DECLARATION OF ORI S. BLUMENFELD IN SUPPORT OF DEBTOR ORANGE GROVE SERVICE, INC.'S AND
SECURED CREDITOR AMERICAN CONTINENTAL BANK'S NOTICE OF MOTION AND MOTION REQUESTING
AN ORDER APPROVING STIPULATION BETWEEN DEBTOR AND AMERICAN CONTINENTAL BANK
AUTHORIZING USE OF CASH COLLATERAL RE 2120 SOUTH FREMONT AVENUE, ALHAMBRA, CA 91803

In re

ORANGE GROVE SERVICE, INC.

Chapter 11

Case.: 2:10-BK-21336-AA

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 10940 Wilshire Blvd., Ste 1600, Los Angeles, CA 90024

A true and correct copy of the foregoing document described as

**DEBTOR ORANGE GROVE SERVICE, INC.'S AND SECURED CREDITOR AMERICAN CONTINENTAL BANK'S NOTICE OF MOTION AND MOTION REQUESTING AN ORDER APPROVING STIPULATION BETWEEN DEBTOR AND AMERICAN CONTINENTAL BANK AUTHORIZING USE OF CASH COLLATERAL RE 2120 SOUTH FREMONT AVENUE, ALHAMBRA, CA 91803**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d), and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On _____ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email addressed indicated below:

☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served): On **July 2, 2010** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Honorable Alan M. Ahart
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1382
Los Angeles, CA 90012

X Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method) by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| | | |
|---|---|---|
| *July 2 , 2010* | *Ori S. Blumenfeld* | */s/ Ori Blumenfeld* |
| | Type Name | Signature |

1

Los Angeles City Clerk
PO Box 53200
Los Angeles, Ca 90052-0200

LA County Tax Collector
Bankrupty Unit
2615 South Grand
Los Angeles, CA 90807-2608

United States Trustee
725 South Figueroa Street
Suite 2600
Los Angeles, CA 90017

Los Angeles County Tax Collector
Mark J Saladino Treasurer Tax Collector
225 N Hill Street
Los Angeles, Ca 90012

American Continental Bank
17700 Castleton Street
Suite 100
City of Industry, CA 91748

Manijeh Habib-Agahi
392 North Bonhill Road
Los Angeles, Ca 90049

California State Board of Equalization
PO Box 942879
Sacramento, CA 94279-7072

Mercedes-Benz Financial
PO Box 9001680
Louisville, KY 40290-1680

Capmark Financial Group
116 Welsh Road
Horsham, PA 19044

Nelly Rabadi
1575 Old House Road
Pasadena, CA 91107

Employment Development
Corporation
Bankruptcy Group MIC 92E
Sacramento, CA 94280-0001

Orange Grove Service, Inc.
PO Box 7398
La Verne, CA 91750

Hamid Habib-Agahi
392 North Bonhill Road
Los Angeles, CA 90049

Phoebe Chen Huang and Nelson L
Huang
1223 Oakhaven Road
Arcadia, CA 91006

Hossein Hedjazi
618 North Las Casas Avenue
Pacific Palisades, CA 90272

Signal Walnut Partnership, LP
20866 E Quail Run Drive
Diamond Bar, CA 91789

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IRS
PO Box 21126
Philadelphia, PA 19114

Wilson & Associates LLP
10940 Wilshire Blvd
Suite 1600
Los Angeles, CA 90024