1  JEFFREY A. KRIEGER (SBN 156535)
   JKrieger@GreenbergGlusker.com
2  JAMES R. MOLEN (SBN 260269)
   JMolen@GreenbergGlusker.com
3  GREENBERG GLUSKER FIELDS CLAMAN
   & MACHTINGER LLP
4  1900 Avenue of the Stars, 21st Floor
   Los Angeles, California  90067-4590
5  Telephone: 310.553.3610
   Fax:  310.553.0687
6
   Attorneys for
7  Signal Walnut Partnership, LP

8              UNITED STATES BANKRUPTCY COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11  In re                              Case No. 2:10-bk-21336-AA

12  ORANGE GROVE SERVICE, INC.,        Chapter 11

13            Debtor.                  **SIGNAL WALNUT PARTNERSHIP,**
                                       **LP'S OBJECTIONS TO DEBTOR'S**
14                                     **DISCLOSURE STATEMENT;**
                                       **DECLARATIONS OF JOSEPH T.**
15                                     **KUNG AND JEFFREY A. KRIEGER;**
                                       **EXHIBITS 1-7**
16
                                       Date:   February 9, 2011
17                                     Time:   10:00 a.m.
                                       Place:  Courtroom 1375
18                                             255 E. Temple St.
                                               Los Angeles, CA 90012
19

20

21

22

23

24

25

26

27

28

*Left margin vertical text:* GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP / 1900 Avenue of the Stars, 21st Floor / Los Angeles, California 90067-4590

79037-00002/1761944.4

OBJECTION TO DISCLOSURE
STATEMENT

# TABLE OF CONTENTS

**Page**

I.    BACKGROUND ...........................................................................................1

II.    The Disclosure Statement Should Not Be Approved Because It Lacks

Adequate Information ...............................................................................2

A.    SWP is Impaired ...............................................................................3

1.    The Plan Does Not Cure Debtor's Pre and Post-Petition

Defaults .................................................................................3

2.    The Plan Drastically Alters SWP's Contractual Rights ...................5

B.    The Disclosure Statement Fails to Contain Adequate Information

Regarding the Funding of Plan Payments.........................................6

1.    Income from Post-Confirmation Operations ...........................7

2.    Sale of the Cell Phone Towers Leases/Easement Rights ..................8

3.    Money from Judgments/Settlements .....................................8

C.    The Disclosure Statement Fails to Contain Adequate Information

Regarding Refinancing ....................................................................9

D.    The Disclosure Statement is Inaccurate.......................................11

1.    Amount of SWP's Claim ...................................................11

2.    Bar Date for Objecting to Claims .......................................11

E.    The Disclosure Statement is Internally Inconsistent .......................12

1.    Impaired vs. Unimpaired Claims........................................12

F.    The Disclosure Statement Contains Omissions...........................12

1.    Property Manager's Job Duties ..........................................12

2.    Payments to Class Four....................................................12

III.    CONCLUSION ............................................................................13

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

# TABLE OF AUTHORITIES

**Page**

**CASES**

*In re Jones,*
    32 B.R. 951 (Bankr. D. Utah 1983) .................................................................. 5

*In re Medley,*
    58 B.R. 255 (Bankr. E.D. Mo. 1986) ............................................................... 3


**STATUTES**

11 U.S.C. § 365 ............................................................................................. 3

11 U.S.C. § 502 .......................................................................................... 2, 12

11 U.S.C. § 506 ........................................................................................... 11

11 U.S.C. § 1124 ......................................................................................... 3, 5

11 U.S.C. § 1125 ...................................................................................... 2, 3, 9

11 U.S.C. §1141 ............................................................................................ 6

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

OBJECTION TO DISCLOSURE
STATEMENT

1     Secured creditor Signal Walnut Partnership, LP ("SWP") hereby submits its

2    objections to Debtor Orange Grove Service, Inc's ("Debtor's") Disclosure Statement filed

3    by Debtor regarding Debtor's Plan of Reorganization (the "Plan"). The Disclosure

4    Statement lacks adequate information and, indeed, contains a myriad of omissions,

5    inconsistencies, and outright inaccuracies. Accordingly, the Disclosure Statement should

6    not be approved.

7

8    **I.**    **BACKGROUND**

9     Debtor is indebted to SWP pursuant to a promissory note that was executed by

10   Debtor on December 5, 2006 in favor of SWP in the original amount of $7,080,000.00

11   (the "Note"). Declaration of Joseph T. Kung ("Kung Decl."), ¶ 2, Exh. 1. The Note is

12   secured by a Short Form Deed of Trust and Assignment of Rents (the "Deed of Trust")

13   also dated December 5, 2006, on four buildings located at 310, 330, 352, and 372 North

14   Lemon Avenue, Walnut, CA 91789, and commonly known as the Lemon Creek property

15   (the "Property"). *Id.*, ¶ 3, Exh. 2.

16    The Note provides for monthly interest payments at the then applicable interest

17   rate, with a balloon payment due of the entire unpaid principal balance on December 28,

18   2013. The applicable interest rate as of January 28, 2010 was 5.5%, adjusting upward to

19   6% on January 28, 2011 for the remainder of the term. The Note also provides that SWP

20   is entitled to attorney's fees incurred in connection with enforcing the Note. Additionally,

21   the Deed of Trust provides that SWP is entitled to all costs and expenses, including

22   attorney's fees, in any action to enforce the Deed of Trust.

23    Pursuant to the terms of the Note and the Deed of Trust, as of March 25, 2010 (the

24   "Petition Date"), SWP's claim against Debtor was $7,271,917.83 (the "Claim"). Kung

25   Decl., ¶ 4, Exh. 3. This amount includes (1) unpaid principal in the amount of

26   $7,080,000; (2) accrued but unpaid interest on the Note totaling $90,318.33; (3) late

27   charges totaling $12,095.00; (4) attorneys' fees incurred in connection with pre-petition

28   legal proceedings on the Note totaling $31,966.64; (5) costs, fees, and expenses incurred

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1    in connection with pre-petition foreclosure proceedings on the Note totaling $16,245.64;

2    (6) consulting fees incurred in connection with pre-petition proceedings on the Note

3    totaling $39,755; and (7) reimbursement for pre-petition advances, plus interest, made by

4    SWP to Debtor in connection with the Note totaling $1,537.22. *Id.* In accordance with

5    the above, on August 20, 2010, SWP filed its Proof of Claim in the amount of

6    $7,271,917.83. A true and correct copy of SWP's Proof of Claim is attached hereto as

7    Exhibit 3. Declaration of Jeffrey A. Krieger ("Krieger Decl."), ¶ 2.

8           Pursuant to the Court's June 21, 2010 Order Setting Deadlines, Debtor was

9    required to file objections to claims by September 20, 2010. Attached hereto as Exhibit 4

10   is a true and correct copy of that June 21, 2010 Court Order. Krieger Decl., ¶ 3. Debtor

11   did not object to SWP's claim by September 20, 2010, or at all. *Id.* Accordingly, SWP's

12   Claim as of the Petition Date is deemed allowed in the amount of $7,271,917.83. 11

13   U.S.C. § 502(a).

14

15   **II.    THE DISCLOSURE STATEMENT SHOULD NOT BE APPROVED**

16           **BECAUSE IT LACKS ADEQUATE INFORMATION**

17           Before a plan proponent can solicit acceptances of a plan of reorganization, a

18   written disclosure statement must be approved by the Court after notice and a hearing, as

19   containing "adequate information." 11 U.S.C. § 1125(b). "Adequate information" means

20   "information of a kind, and in sufficient detail, as far as is reasonably practicable in light

21   of the nature and history of the debtor and the condition of the debtor's books and records,

22   that would enable a hypothetical reasonable investor typical of holders of claims or

23   interests of the relevant class to make an informed judgment about the plan...." 11 U.S.C.

24   § 1125(a)(1). The Disclosure Statement lacks adequate information in the following

25   respects and thus should not be approved.

26

27

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

A.    **SWP is Impaired**

The Disclosure Statement repeatedly describes SWP as an unimpaired creditor under the Plan. *See, e.g.,* Disclosure Statement and Plan ("DS"), pp. 11, 21, 26. Pursuant to 11 U.S.C. § 1124 a class of claims is impaired under a plan unless, with respect to each claim in the class, (1) the plan "leaves unaltered the legal, equitable, and contractual rights to which such claim . . . entitles the holder of such claim or (2) notwithstanding any right of acceleration, the plan does all of the following: (a) cures all defaults, other than those specified in 11 U.S.C. § 365(b)(2); (b) reinstates the maturity of such claim as such maturity existed before such default; (c) compensates the holder of such claim for any damages incurred as a result of any reasonable reliance on the right to accelerate; (d) if the claim arises from a failure to perform a nonmonetary obligation, compensates the holder for any actual pecuniary loss; and (e) does not otherwise alter the legal, equitable, or contractual rights of the holder of the claim. A disclosure statement does not contain adequate information under Section 1125 where it incorrectly purports to classify an impaired claim as being unimpaired. *See, e.g., In re Medley*, 58 B.R. 255, 257 (Bankr. E.D. Mo. 1986).

Debtor's assertions that SWP is unimpaired under the Plan are incorrect as a matter of law because (1) the Plan does not cure, or even purport to cure, Debtor's pre and post-petition defaults; and (2) the Plan does not leave SWP's contractual rights unaltered.

1.    The Plan Does Not Cure Debtor's Pre and Post-Petition Defaults

Pre-petition, Debtor breached the Note and Deed of Trust and defaulted on its obligations by virtue of, *inter alia*, the following acts:

a.    Debtor breached the Deed of Trust by failing to pay property taxes due on the Property on December 10, 2008 and again on April 10, 2009. Kung Decl., ¶ 5a.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

OBJECTION TO DISCLOSURE
STATEMENT

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1          b.      Debtor breached the Note by encumbering the Property with a junior

2  deed of trust in the amount of $150,000 on February 20, 2009, without the consent of

3  SWP. *Id.*, ¶ 5b.

4          c.      Debtor breached the Note by failing to make monthly payments due

5  to SWP on October 28, 2009 and on November 28, 2009. *Id.*, ¶ 5c.

6          d.      On or about December 10, 2009, Debtor again breached the Deed of

7  Trust by failing to pay property taxes due on the Property. *Id.*, ¶ 5d.

8          e.      On or about February 28, 2010, Debtor again breached the Note by

9  failing to make the monthly payment due to SWP. *Id.*, ¶ 5e.

10         On or around January 21, 2010, after SWP had discovered the junior deed of trust

11  and sought judicial relief, Debtor removed the $150,000 junior deed of trust from the

12  Property and made a lump sum payment to Signal Walnut in an attempt to cure the

13  defaults identified above as Nos. 1-4. Kung Decl., ¶ 6. However, Debtor did not fully

14  cure its defaults because it failed to reimburse Signal Walnut for certain collection costs

15  and accrued interest. *Id.* Thus, its defaults were never fully cured. Moreover, Orange

16  Grove subsequently defaulted with respect to the monthly interest payment due on the

17  Note on February 28, 2010. *Id.*, ¶ 5e.

18         As set forth in SWP's Proof of Claim, as of the Petition Date, Debtor owed SWP

19  $191,917.83 above and beyond the unpaid principal. This is the amount that Debtor must

20  pay to cure its pre-petition defaults.

21         In addition to the above, Debtor has continued to default on its obligations under

22  the Note by, among other things, failing to make its monthly interest payments in the

23  amount of $32,450. By virtue of these defaults, at least $324,500 in unpaid interest has

24  accrued since the commencement of this case to date.[1] Additional interest continues to

25  accrue.

26  _____

27  [1] Since the Petition Date, Debtor has made $259,137.24 in adequate protection payments
to Debtor pursuant to the Order approving the parties' cash collateral stipulation and then
pursuant to the Court's December 21, 2010 Order re Debtor's Use of Cash Collateral.

28  These payments were required in order to protect SWP from the diminution of the value

79037-00002/1761944.4                          4                   OBJECTION TO DISCLOSURE
                                                                              STATEMENT

1    In addition to accrued but unpaid interest, SWP has incurred post-petition

2    attorneys' fees which must be paid by Debtor.  In total, the Plan must provide for payment

3    to SWP in the amount of no less than $516,417.83, plus accrued interest through

4    confirmation, to cure all arrearages and Debtor's pre and post petition defaults.  The cure

5    of these defaults must occur as of the effective date of the Plan, otherwise SWP is

6    impaired.  *See In re Jones*, 32 B.R. 951, 960 (Bankr. D. Utah 1983) ("Cure and

7    compensation required by Section 1124(2) must be completed by the effective date of the

8    plan if impairment is to be avoided").  Nowhere does the Disclosure Statement or the Plan

9    purport to cure these defaults by the effective date of the Plan, or at all.  Accordingly,

10    SWP is impaired.

11

12        2.    The Plan Drastically Alters SWP's Contractual Rights.

13    The Deed of Trust expressly provides that upon any default in payment on the

14    Note, SWP may immediately accelerate the Note and foreclose on the property.  *See* Exh.

15    2 at § 11.  The Plan proposes to seriously alter, if not obliterate, these contractual rights.

16    The Plan states that if Debtor is unable to make any Plan payments to SWP in a

17    particular month, the Debtor will be given a 30-day grace period to cure the default.  DS,

18    pp. 40-41.  Then, if Debtor fails to cure within another 30 days (for a total grace period of

19    60 days), Debtor will list the Property for sale at its "fair market value."  Debtor purports

20    to give itself a further 90 day period within which to sell the Property with the broker of

21    its choice.  If the Property fails to sell within the 90 day period, Debtor will then list the

22    Property with a different broker, without any time limitation.  The Plan provides a

23    virtually identical sale process in the event Debtor fails to meet its obligation to pay the

24    entire principal balance in December 2013.

25

26    of its collateral.  Nevertheless, SWP recognizes that Debtor may choose to argue that

     these adequate protection payments should be offset against the accrued post-petition

27    interest.  Even assuming *arguendo*, that the Court were to adopt that approach, there

     would still be a balance of at least $65,362.76 of accrued but unpaid post-petition interest

28    on the principal balance under the Note.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

OBJECTION TO DISCLOSURE
STATEMENT

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1   The Disclosure Statement and Plan are inadequate because they are totally devoid

2   of any information as to what happens if both the first and second broker fail to sell the

3   Property.  More importantly, the Plan eradicates SWP's acceleration and foreclosure

4   rights.  Nowhere does the Note or Deed of Trust provide anything remotely similar to the

5   convoluted procedure set forth in the Plan.  Rather, under its contract with the Debtor,

6   upon any default in payment, SWP may immediately accelerate the Note and foreclose on

7   the Property.  Accordingly, because the Plan purports to alter these contractual rights,

8   SWP is impaired.

9   In contrast to this complete alteration of SWP's rights on default as described

10   above, the Plan provides at page 27 that SWP's "lien is not modified."  This is just the sort

11   of self-contradiction that makes the Disclosure Statement unintelligible, and thus wholly

12   inadequate as a source of information about the Plan.  11 U.S.C. §1141(c) provides that

13   upon confirmation, a secured creditor has only the rights specified in the Plan.  Here,

14   those rights are entirely unclear.  If Debtor intends that the Note and Deed of Trust are to

15   survive, then the Disclosure Statement and Plan should say so expressly, and any

16   language to the contrary should be removed.

17

18   **B.**     **The Disclosure Statement Fails to Contain Adequate Information**

19          **Regarding the Funding of Plan Payments**

20   The Disclosure Statement states that "the sources of money earmarked to pay

21   creditors and interest holders" are as follows (DS, pp. 19-20):

22          a.     Rents generated from leasing and renting the Lemon Creek and

23   Fremont Center;

24          b.     Funds received as expense reimbursement from the Common Area

25   Parcel Owners;

26          c.     Funds received from the sales to Unison of the cell tower leases and

27   the easement rights to and over the cell towers in the centers; and

28

6

OBJECTION TO DISCLOSURE
STATEMENT

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1         d.    Money from judgments and/or settlements from Debtor's claims

2    against SWP, Kung, Phoebe Chen, Nelson Huang and Grubb & Ellis.

3        With respect to items (a) and (b), these are simply a restatement of Debtor's

4    ongoing business operations. Debtor has had these sources of revenue both pre and post-

5    petition, yet has been unable to pay its debts as they become due. Debtor's current NOI

6    remains insufficient to pay its creditors under the Plan. Indeed, pursuant to this Court's

7    December 21, 2010 Order, for the months of November 2010, December 2010, and

8    January 2011, Debtor was to pay SWP <u>all</u> revenue generated by the Property, less certain

9    approved expenses, up to a maximum of $33,000 per month. Krieger Decl., ¶ 4, Exh. 5.

10   The payments actually received by SWP for the months in question were, respectively,

11   $22,946, $21,046, and $24,365. *Id.*, ¶ 5, Exh. 6. Therefore, the average NOI generated by

12   the Property during the last three months was no more than $22,785. *Id.*

13       As discussed in more detail below, the Disclosure Statement is completely

14   inadequate regarding how Debtor expects the NOI from the Property to leap from an

15   average of $22,785/month to approximately $40,000/month in Year 1, $55,000/month in

16   Year 2, and $63,000/month in Year 3, as contemplated by the Plan (DS, pg. 31), let alone

17   how Debtor will generate sufficient income to make monthly debt payments to SWP in

18   the amount of $36,000 (*See Id.*, pg. 23).

19

20       1.    <u>Income from Post-Confirmation Operations</u>

21       The Disclosure Statement contains nothing more than the sparsest of narrative

22   descriptions regarding alleged prospective improvements to Debtor's post-confirmation

23   operations. DS, pp. 16-17. In sum, Debtor claims that it will improve tenant occupancy

24   going forward because it retained Neil Wachsberger and Torrey Pacific Group

25   (collectively "TPG") as its marketing broker within the past two months. There is no

26   explanation or demonstration of how this change has translated or will translate into actual

27   post-confirmation revenue increases.

28

1    Indeed, Debtor does not identify a single new tenant that has been generated by

2    virtue of its relationship with TPG, or at all.  Instead, it relies on the fuzzy and inadequate

3    statement that "TPG and Debtor have <u>identified</u> and <u>contacted</u> a substantial number of

4    <u>potential</u> tenants and are actively engaged in discussions regarding terms of leases with a

5    few of these prospective tenants." DS, pg. 17 (emphasis added).  It simply strains

6    credulity for Debtor to suggest its relationship with TPG supports the astronomical

7    increase in NOI that Debtor projects.  This is especially true given that this relationship

8    has thus far produced no tangible improvements in Debtor's operations.

9    Beyond retaining TPG, Debtor identifies no substantive changes in its operations.

10    Thus, there is inadequate information to support Debtor's post-confirmation income

11    projections.

12

13        2.    Sale of the Cell Phone Towers Leases/Easement Rights

14    The Disclosure Statement states that Debtor is "working with Unison to finalize the

15    sales of current cell tower leases and easement rights." DS, pg. 16.  These sales are the

16    subject of a separate motion (the "Cell Tower Motion") filed by Debtor and set for

17    hearing on February 9, 2011, the same date as the hearing on the Disclosure Statement.

18    For the reasons set forth in SWP's separately filed opposition, the relief sought in the Cell

19    Tower Motion is unlawful and the motion should be denied.  The Disclosure Statement

20    and Plan should be amended to reflect the results of the February 9 hearing on the Cell

21    Tower Motion.

22

23        3.    Money from Judgments/Settlements

24    The only other source of money identified in the Disclosure Statement is money

25    from judgments and/or settlements from Debtor's claims against SWP, Kung, Phoebe

26    Chen, Nelson Huang, and Grubb & Ellis.  Once again, the information regarding this

27    supposed source of money is woefully inadequate.

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1   First, there is currently no action even pending against Phoebe Chen, Nelson

2   Huang, or Grubb & Ellis. As Debtor admits in the Disclosure Statement, the only action

3   as against these parties was an adversary proceeding filed by the Debtor in this

4   bankruptcy, which has been dismissed by this Court without prejudice. DS, pg. 15.

5   Second, while there is an action pending in the Superior Court of Pomona between

6   Debtor and SWP, there is absolutely no justification for Debtor's claim that it will ever

7   recover any money on its cross-complaint in this action.

8   Debtor does not explain whether and to what extent it is basing its Plan on the

9   belief that it will prevail in legal proceedings. If it is, this assumption is highly

10  speculative, to say the least. In any event, if Debtor is to satisfy the requirements of

11  Section 1125 it must provide much more information regarding its likelihood of prevailing

12  in these actions, the amount of money it expects to recover, and the basis for this amount.

13

14  **C.**    **The Disclosure Statement Fails to Contain Adequate Information**

15       **Regarding Refinancing**

16  According to the Disclosure Statement, the principal balance of SWP's Note in the

17  amount of $7,200,000 will be repaid in Plan Year 4. DS, pg. 26. The cash necessary to

18  make this repayment will allegedly come entirely from refinancing the Note. *Id.*, pg. 37.

19  Debtor identifies no other source of money for repayment of the principal balance on the

20  Note.

21  First, Debtor's statement regarding the amount of principal under the Note is

22  inaccurate. It is actually $7,080,000. *See* Kung Decl., ¶ 2, Exh. 1. The $7,200,000 figure

23  used in the Disclosure Statement is the amount that Debtor alleges SWP's claim to be,

24  which is itself inaccurate (discussed *infra* at Section II.D.1).

25  Second, Debtor's assertion that it will be able to refinance the entirety of the Note

26  within four years is based on an unsupported projected valuation. The appraisal for the

27  Property filed by Debtor states that the fair market value for the Property is $7,500,000.

28  *See* DS, Exh. I, part 1 at pg. 4. This value is based on the income approach. The income

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1   used for this valuation is a projected monthly rental income of $54,760. *Id.*, part 2 at pg.

2   27. This number is flawed. In reality, during the last three months for which data is

3   available (September-November 2010) the Property only generated an average of $45,923

4   in monthly rental income. Krieger Decl., ¶ 6, Exh. 7. The higher number used in the

5   appraisal is based on "potential gross income." DS, Exh. I, part 2 at pg. 26 (emphasis

6   added). In other words, it is entirely speculative. Using the actual monthly rental income

7   of the property, the fair market value for the Property would be substantially less. All else

8   being equal and employing a basic percentage ratio of 84% (i.e., $45,923 divided by

9   $54,760) the Property's current value would actually be in the range $6,300,000 (i.e.,

10  $7,500,000 x 84%). That is, the appraised value of the Property is what the value of the

11  Property would be if Debtor's rental income were 20% more than it is now. Put another

12  way, the Property will only be worth the appraised value if Debtor is able to substantially

13  improve its post-confirmation operations, which, as set forth above, Debtor has failed to

14  demonstrate its ability to do.[2]

15      Third, even assuming *purely arguendo* that the Property will be worth $7,500,000

16  in less than three years, this would still be nowhere near sufficient to obtain the

17  refinancing necessary to repay the principal balance on the Note. Using the projected

18  principal balance in the Disclosure Statement of $7,200,000, Debtor would have to obtain

19  refinancing at a loan to value ratio of 95/5. This is unheard of, even for the most credit-

20  worthy borrowers. In order to obtain sufficient refinancing to repay SWP the principle

21  balance on the Note, the Property would likely have to be worth upwards of $10 million.

22  Debtor does not even purport to suggest, nor could it possibly justify the suggestion, that

23  the Property will experience such a drastic increase in value within the next three years.

24  Debtor seemingly ignores this reality and, indeed, does not include any information

25

26  [2] Moreover, Debtor's estimated value of the property does not take into account the
    proposed sale of the cell tower rental stream and the proposed 50 year easement, which, if
27  approved, would dramatically decrease the value of SWP's collateral even further. The
    potential impact of this proposed sale is discussed in further detail in SWP's separately
28  filed opposition to the Cell Tower Motion.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1    regarding the loan to value ratio it expects to obtain, let alone any reasons to support this

2    expectation.

3

4    **D.    The Disclosure Statement is Inaccurate**

5         1.    Amount of SWP's Claim

6         At page 26, the Disclosure Statement states that the total amount of SWP's allowed

7    claim is $7,200,000. Debtor has manufactured this number out of whole-cloth. SWP's

8    allowed claim as of the Petition Date is $7,271,917.83. *See* Exh. 3. It is entirely unclear

9    how Debtor arrived at the figure in the Disclosure Statement. In any event, this

10   inaccuracy is repeated and relied on throughout the Disclosure Statement and distorts

11   virtually every calculation made by Debtor as it relates to SWP's Claim.

12        Furthermore, because SWP is over-secured based on the appraisal submitted by

13   Debtor, SWP is entitled to its post-petition attorney's fees and interest pursuant to 11

14   U.S.C. § 506(b). Debtor appears to acknowledge this, as it states that SWP's allowed

15   claim is "$7,200,000 + arrearage and reasonable fees." DS, pg. 26 (emphasis added).

16   However, the Disclosure Statement contains no information regarding these post-petition

17   amounts. Debtor has in its possession all the necessary information regarding accrued

18   post-petition interest and should include this in the Disclosure Statement. Information

19   regarding SWP's post-petition attorneys fees and expenses is available upon request,

20   which Debtor should have sought prior to filing the Disclosure Statement. As of

21   December 31, 2010, SWP's post-petition attorneys' fees and expenses are $167,373.

22   Krieger Decl., ¶ 7.

23

24        2.    Bar Date for Objecting to Claims

25        Debtor states that "The Court has not yet set a bar date for objecting to claims."

26   DS, p. 10. This is surely incorrect. On June 21, 2010, the Court issued an Order Setting

27   Deadlines which plainly orders "that Debtor must file objections to claims by September

28   30, 2010." *See* Exh. 4. Not only is Debtor's assertion regarding the bar date for objecting

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1   to claims demonstrably untrue, but it goes directly to the heart of the claims of Debtor's

2   creditors. To the extent Debtor did not object to a creditor's claim by September 20, 2010

3   (and it did not object to SWP's), those claims are deemed allowed. 11 U.S.C. § 502(a).

4   Debtor's statement in this regard is not only inadequate, but it is inaccurate, misleading,

5   and purports to alter the established rights of Debtor's creditors.

6

7        **E.**     **The Disclosure Statement is Internally Inconsistent**

8             1.    Impaired vs. Unimpaired Claims

9       On page 10, the Disclosure Statement states that "No class is unimpaired and

10   therefore does not vote." Immediately thereafter, on page 11, it states, with emphasis, that

11   "Secured Creditors, ACB and SWP are unimpaired under the Plan." These statements are

12   plainly inconsistent and render the Disclosure Statement unintelligible.

13

14        **F.**     **The Disclosure Statement Contains Omissions**

15             1.    Property Manager's Job Duties

16       At the bottom of page 36, the Disclosure Statement purports to identify the persons

17   who will manage Debtor's properties and business affairs. This includes a subsection

18   entitled "Job descriptions," where the duties of these persons are supposed to be set forth.

19   This subsection is conspicuously empty. The Disclosure Statement is inadequate and, in

20   fact, completely devoid of any information regarding the respective duties of the persons

21   responsible for managing Debtor's properties and business affairs.

22

23             2.    Payments to Class Four

24       At page 30 of the Plan, Debtor sets forth a schedule and accompanying narrative

25   which it describes as "Payments to DIP". Class Four should be described as payments to

26   the holders of equity interests in Debtor, not to Debtor itself. In any event, this schedule is

27   left completely blank with respect to the amount of these payments. Just below this

28   schedule, Debtor states that it will make one payment to itself in Plan Month 48 in the

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1  "approximate amount of $____," again providing no information about the amount of this

2  payment. Ultimately, the Disclosure Statement contains no information whatsoever

3  regarding the actual amounts that Debtor proposes to pay its equity holders under the

4  Plan.

5

6  **III.    CONCLUSION**

7          For all the foregoing reasons, SWP requests that the Court disapprove Debtor's

8  Disclosure Statement.

9

10

11  DATED: January 26, 2011                   GREENBERG GLUSKER FIELDS
                                             CLAMAN & MACHTINGER LLP
12

13                                           By: _____
14                                               JEFFREY A. KRIEGER (SBN 156535)
                                                 Attorneys for Signal Walnut Partnership,
15                                               LP

16

17

18

19

20

21

22

23

24

25

26

27

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

79037-00002/1761944.4                    13                    OBJECTION TO DISCLOSURE
                                                                      STATEMENT

# DECLARATION OF JOSEPH T. KUNG

I, Joseph T. Kung, hereby declare:

1.      I am the General Partner of Signal Walnut Partnership, LP ("SWP"). I have held this position since 1999. Among other things, my responsibilities include managing the day-to-day operations of SWP including, but not limited to, all matters relating to real property, loans relating to real property, collection of payments, and all financial matters of every kind for SWP. I have personal, first-hand knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.      Orange Grove Service, Inc. ("Debtor") purchased the Lemon Creek property, commonly known as the four buildings located at 310, 330, 352, and 372 North Lemon Avenue, Walnut, CA 91789, and described in Debtor's Disclosure Statement as 308-388 Lemon Avenue, Walnut, CA 91789 (the "Property"), from SWP on or about December 28, 2006 for a sales price of approximately $11,800,000. The terms of the sale provided for a cash payment of approximately $4,800,000, plus a promissory note in the original amount of $7,080,000 ($80,000 of which covered closing costs). Debtor remains indebted to SWP pursuant to the promissory note that was executed by Debtor on December 5, 2006 in favor of SWP in the original amount of $7,080,000.00 (the "Note"). Attached hereto as Exhibit "1" is a true and correct copy of the Note.

3.      The Note is secured by a Short Form Deed of Trust and Assignment of Rents on the Property, which was duly recorded on December 28, 2006 as document number 06 2878849 in the Official Records of the Officer of the County Recorder of Los Angeles County (the "Deed of Trust"). Attached hereto as Exhibit "2" is a true and correct copy of the Deed of Trust.

4.      Pursuant to the terms of the Note and the Deed of Trust, as of March 25, 2010 (the "Petition Date"), SWP's claim against Debtor was $7,271,917.83 (the "Claim").

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1    This amount includes (1) unpaid principal in the amount of $7,080,000; (2) accrued but

2    unpaid interest on the Note totaling $90,318.33; (3) late charges totaling $12,095; (4)

3    attorneys' fees incurred in connection with pre-petition legal proceedings on the Note

4    totaling $31,966.64; (5) costs, fees, and expenses incurred in connection with pre-petition

5    foreclosure proceedings on the Note totaling $16,245.64; (6) consulting fees incurred in

6    connection with pre-petition proceedings on the Note totaling $39,755; and (7)

7    reimbursement for pre-petition advances, plus interest, made by SWP to Debtor in

8    connection with the Note totaling $1,537.22.  In accordance with the above, on August 20,

9    2010, SWP filed its Proof of Claim in the amount of $7,271,917.83.  Attached hereto as

10   Exhibit "3" is a true and correct copy of SWP's Proof of Claim.

11          5.      Pre-petition, Debtor breached the Note and Deed of Trust and defaulted on

12   its obligations by virtue of, *inter alia*, the following acts:

13          a.      On or about December 10, 2008, and again on April 10, 2009, Debtor

14                  breached the Deed of Trust by failing to pay property taxes due on the

15                  Property.

16          b.      On or about February 20, 2009, Debtor breached the Note by

17                  encumbering the Property with a junior deed of trust in the amount of

18                  $150,000 without the consent or knowledge of SWP.

19          c.      On or about October 28, 2009 and November 28, 2009, Debtor

20                  breached the Note by failing to make monthly interest payments due to

21                  SWP.

22          d.      On or about December 10, 2009, Debtor again breached the Deed of

23                  Trust by failing to pay property taxes due on the Property.

24          e.      On or about February 28, 2010, Debtor again breached the Note by

25                  failing to make the monthly interest payment due to SWP.

26          6.      On or around January 21, 2010, after SWP had discovered the junior deed of

27   trust and sought judicial relief, Debtor removed the $150,000 junior deed of trust from the

28   Property and made a lump sum payment to SWP in an attempt to cure the defaults

1  identified in paragraph 5, subsections (a)-(d).  However, Debtor did not fully cure its

2  defaults because it failed to reimburse SWP for certain collection costs and accrued

3  interest.  Thus, its defaults were never fully cured.

4

5      I declare under penalty of perjury under the laws of the State of California and the

6  United States of America that the foregoing is true and correct.

7

8      Executed this 2 8 th day of January, 2011, at Diamond Bar, California .

9

10

11  Joseph T. Kung

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

79037-00002/1761944.4                    16                    DECLARATION OF JOSEPH T. KUNG

# DECLARATION OF JEFFREY A. KRIEGER

I, Jeffrey A. Krieger, hereby declare:

1.      I am an attorney duly licensed to practice in the state and federal courts of the State of California and I am a partner of Greenberg Glusker Fields Claman & Machtinger LLP, attorneys of record for Signal Walnut Partnership, L.P. ("SWP") in the bankruptcy case of Orange Grove Service, Inc. ("Debtor"). The facts set forth herein are known to me of my own personal knowledge and if sworn I could and would testify competently thereto under oath.

2.      On August 20, 2010, SWP filed its Proof of Claim in the amount of $7,271,917.83. A true and correct copy of SWP's Proof of Claim is attached hereto as Exhibit "3."

3.      On June 21, 2010, the Court issued an Order Setting Deadlines which orders "that Debtor must file objections to claims by September 20, 2010." A true and correct copy of this Order is attached hereto as Exhibit "4." Debtor did not object to SWP's claim by September 20, 2010, or at all.

4.      On December 21, 2010, the Court issued an Order Authorizing Debtor's Interim Use of Cash Collateral of Signal Walnut Partnership, LP (the "Cash Collateral Order"). Pursuant to this Order, for the months of November 2010, December 2010, and January 2011, Debtor was to pay SWP all revenue generated by the Property, less certain approved expenses, up to a maximum of $33,000 per month. A true and correct copy of this Order is attached hereto as Exhibit "5."

5.      On behalf of SWP, I have received three checks from Debtor pursuant to the Cash Collateral Order in the following amounts: $22,946.04 for the month of November 2010; $21,046.07 for the month of December 2010; and $24,365.13 for the month of January 2011. True and correct copies of these checks are attached hereto as Exhibit "6." The average of these three amounts is $22,785.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

6.      Attached hereto as Exhibit "7" are true and correct copies of Debtor's financial statement summaries for the last three months for which data is available, namely: September 2010, October 2010, and November 2010.  These summaries appear to have been generated by Debtor's property management company, STC Management, and were sent to me by Debtor's counsel.  Based upon Exhibit 7, Debtor's total rental income for the months in question was as follows: $53,378.76 for the month of September 2010; 40,947.82 for the month of October 2010; and 42,443.19 for the month of November 2010.  The average of these three amounts is $45,923.  Accordingly, during the period of September 2010 to November 2010, the Property only generated an average of $45,923 in monthly rental income.

7.      As of December 31, 2010, SWP's post-petition attorneys' fees and expenses with my law firm in connection with enforcing SWP's rights under its Note and Deed of Trust with the Debtor are $167,373.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed this 26th day of January, 2011, at Los Angeles, California.

Jeffrey A. Krieger

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590