EDWARD G. SCHLOSS CA Bar No. 102858
3637 Motor Avenue, Suite 220
Los Angeles, California 90034
(310) 733-4488
B23107/nc

Attorneys for Secured Creditor
AMERICAN CONTINENTAL BANK

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Bk. No. 2:10-bk-21336-AA |
| ORANGE GROVE SERVICE, INC., | ) Chapter 11 |
| Debtor. | ) OBJECTIONS TO APPROVAL OF DEBTOR'S FIRST AMENDED DISCLOSURE STATEMENT |
| | ) Hearing - <br> ) Date: July 6, 2011 <br> ) Time: 1:30 p.m. <br> ) Place: Courtroom 1639 <br>      255 E. Temple St. <br>      Los Angeles, CA 90012 |
| | ) Honorable Judge Ellen Carroll |

American Continental Bank, "ACB" or "Secured Creditor" herein, hereby objects to the Debtor's *First Amended* Disclosure Statement filed May 6, 2011 (hereinafter "Amended Disclosure Statement"), on the following grounds:

ACB holds a first Deed of Trust, securing a Promissory Note in the original principal amount of $3,475,000.00, secured by a shopping center generally described as 2120 South Fremont Ave., Alhambra, CA 91803, and commonly known as the "Fremont Center." ACB filed a proof of claim on April 16, 2010 in the amount of $3,404,443.89.

Debtor filed its first Disclosure Statement December 30, 2011. Amid myriad infirmities, approval of the Disclosure Statement was *denied* by Order [Docket entry

1

1  #264] entered February 22, 2011. Subsequently, both ACB and Signal Walnut
2  Partnership, LP (hereinafter "SWP") filed motions for relief from the automatic stay.
3  ACB's motion was denied, but monthly adequate protection payments of $13,864.61
4  were ordered. *See* Order Denying Motion for Relief From Automatic Stay [Docket entry
5  #287]. SWP's motion was also denied, and the Court set a schedule for submission of the
6  Amended Disclosure Statement, its approval, and confirmation of the Amended Chapter
7  11 Plan. *See* Order Granting Motion for Relief From the Automatic Stay Under 11 U.S.C.
8  §362 (Real Property) [Docket entry #290], *modified by* Order Approving Stipulation
9  Between Debtor and Signal Walnut Partnership, LP Regarding Deadline to File
10 Disclosure Statement [Docket entry #301]. Debtor filed the instant *First Amended*
11 Disclosure Statement on May 6, 2011, as Docket entry #311. On May 19, 2011, the Court
12 set July 6, 2011 at 1:30 pm as the hearing date to consider the adequacy of the *First*
13 *Amended* Disclosure Statement, and Debtor served Notice of the hearing on May 20,
14 2011.
15     The *First Amended* Disclosure Statement does not provide adequate information
16 necessary for ACB to make an informed judgment about the Debtor's proposed *First*
17 *Amended* Chapter 11 Plan as required under 11 U.S.C. §1125.
18     Section 1125 of the Bankruptcy Code has been described as "the heart of the
19 consolidation of the various reorganization chapters found in current law." H.R. No. 95-
20 595, 95th Cong. 1st Session 408-10 (1977), U.S. Code Cong. & Admin. News 1978, pp.
21 5787, 6364. The court in In Re Scioto Valley Mortg. Co., 88 B.R. 168, 170
22 (Bankr.S.D.Ohio 1988) stated: "One of the fundamental policies underlying the Chapter
23 11 reorganization process is disclosure." Those statements serve to illustrate the
24 importance of a Disclosure Statement, which is the basis for a debtor's plan for
25 reorganization. Section 1125(b) provides that a Chapter 11 debtor's Disclosure Statement
26 must be approved by the Court as containing adequate information. The plan proponent
27 bears the burden of showing disclosure of adequate information, both at the hearing on
28 the disclosure statement pursuant to section 1125 and again at confirmation pursuant to

1 | section 1129(a)(2). In re Michelson, 141 B.R. 715, 720 (Bankr.E.D.Cal. 1992).

2 |     Section 1125(a) states that the term "adequate information" means information of
3 | a kind, and in sufficient detail, that would enable a hypothetical reasonable investor
4 | typical of holders of claims or interest of the relevant class to make an *informed judgment*
5 | about a debtor's Chapter 11 Plan. "An informed judgment cannot be made without
6 | information about the plan and about how the provisions of the plan will be put into
7 | effect. ... Similarly, every disclosure statement needs an explanation of why the proposed
8 | means of implementation will be adequate to the task." In re Michelson, 141 B.R. at 718-
9 | 719. Determinations as to what constitutes adequate information must be made on a case-
10 | by-case basis, In re Brotby, 303 B.R. 177, 193 (9th Cir. BAP 2003) (*citing* In Re Texas
11 | Extrusion Corp., 844 F.2d 1142, 1157 (5th Cir. 1988)), but, as the court in In Re Scioto
12 | Valley Mortg. Co., *supra*, recognized, "it is imperative...that the debtor disclose all
13 | pertinent information" so that a creditor can cast an informed vote in accepting or
14 | rejecting the Plan. 88 B.R. at 172. The First Amended Disclosure Statement filed by the
15 | Debtor herein, however, is filled with incorrect and contradictory information and fails to
16 | provide material information. It therefore does not allow for an informed judgment about
17 | the Debtor's Amended Chapter 11 Plan.

## I. THE AMENDED DISCLOSURE STATEMENT DOES NOT SHOW HOW THE ERRONEOUS MONTHLY PAYMENT TO ACB WAS CALCULATED

20 |     The First Amended Disclosure Statement, page 23, states that "Interest shall
21 | accrue in accordance with the terms of the Original Note." The Debtor's Amended
22 | Disclosure Statement then goes on to state that Secured Creditor will receive monthly
23 | payments of **$13,864.61** per month. However, $13,864.61 is the amount of the adequate
24 | protection payment to Secured Creditor. *See* Amended Disclosure Statement [Docket
25 | entry #311], page 12, lines 20-23; Order Denying Motion for Relief From Automatic Stay
26 | [Docket entry #287]. **The adequate protection payment amount is neither based on,**
27 | **nor an approximation of, the monthly payment amount due under the Original**
28 | **Note.** Under the terms of the Original Note, and as stated in ACB's Motion for Relief

3

1  from the Automatic Stay Under 11 U.S.C. §362 (Real Property) [Docket entry #266], the
2  regular monthly payment amount, based on a 3.25% Prime Rate, is $16,005.77. The
3  $13,864.61 monthly payment amount is wholly unfounded.[1] There is no support for such
4  a monthly payment in the Original Note. The New Note would require a radical deviation
5  from the terms of the Original Note in order to arrive at such a monthly payment, but no
6  information is given regarding the New Note other than a maturity date and interest rate.
7  **The Disclosure Statement makes no attempt to explain the origin of or calculation**
8  **for a monthly payment of $13,864.61.**
9       The Amended Disclosure Statement offers no information for Secured Creditor to
10 determine its treatment under the Amended Chapter 11 Plan. Is the $13,864.61 amount to
11 remain unchanged despite fluctuations in the Prime Rate (on which the Note's interest
12 rate depends)? Will the monthly payment amount change? If so, how? The Amended
13 Disclosure Statement offers no basis for the monthly payment amount, and therefore no
14 guidance for Secured Creditor's future treatment under the Amended Chapter 11 Plan.
15      Debtor has substituted the adequate protection payment amount for the monthly
16 payment amount under the Note. No explanation is given for this slight. Nor is there
17 explanation as to how the terms of the Original Note could be tortured into producing
18 such a monthly payment. Debtor misstates itself: Debtor says it will give Secured
19 Creditor a New Note which matures at the end of the Plan (60 months after the Effective
20 Date). In reality, Debtor proposes to continue adequate protection payments for the full
21 term of the Plan, then pay off the Note. This misleading subterfuge does not provide
22 "adequate information" to enable a hypothetical investor to make an informed decision;
23 rather, it is calculated to conceal and hide vital information regarding Secured Creditor's
24 treatment. Approval of the Amended Disclosure Statement must be denied until Debtor

---

[1] Debtor did use $13,864.61 in its untimely Opposition to American Continental Bank Motion for Stay Relief [Docket entry #274]. However, this document was not incorporated, either explicitly or implicitly, into the Amended Disclosure Statement. In any event, the Debtor's calculation in its Opposition was erroneous, failing to calculate on a 365/360 basis and amortizing the payment over 424 months, rather than 360 months.

explains its treatment of Secured Creditor and the basis for such treatment.

## II. DEBTOR'S PROJECTIONS ARE INCOMPLETE AND MISLEADING

It has been recognized that economic projections are crucial for a proper judgment as to the feasibility of a plan of reorganization and that a debtor must set forth reasonable bases for the projections and the assumptions upon which they are based. *See* Beecher v. Able, 374 F.Supp. 341 (S.D.N.Y. 1974). Conclusory allegations or opinions without supporting facts are not adequate. In Re Ligon, 50 B.R. 127, 130 (Bankr.M.D.Tenn. 1985). Similarly, the proposed plan must be more than a visionary scheme which promises more than the debtor can deliver. In re Pizza of Hawaii, 761 F.2d 1374, 1382 (9th Cir. 1985). The Amended Disclosure Statement herein, however, makes crucial projections with unsupported or incomplete supporting information. As such, it is impossible to make an informed judgment regarding the feasibility of Debtor's Amended Chapter 11 Plan.

### A. DEBTOR'S PROJECTIONS SHOULD ANTICIPATE A RISE IN THE INTEREST RATE

Debtor's interest rate is currently tied to the Prime Rate. The current Note between Debtor and Secured Creditor matures of its own terms November 26, 2014. Debtor proposes to extend the term of the Note to August 2016 (depending on the Effective Date of the Plan).

Debtor has an extremely advantageous interest rate (Prime Rate plus a margin of 0.25%). If Debtor intends to extend the term of the Note from November 2014 to August 2016, the interest rate must be increased significantly. To allow Debtor to unilaterally force Secured Creditor to an artificially low interest rate (especially in these economic times and given Debtor's history of bankruptcy and non-payment, and the future risk of non-payment) cannot be 'fair and reasonable.' Debtor must therefore set forth projections with a realistic interest rate. Furthermore, the Original Note provides that in an Event of Default (defined in the Note to include "the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower"), the interest rate shall increase

1  "by adding a 5.000 percentage point margin." The Amended Disclosure Statement, page
2  23, states that "Interest shall accrue in accordance with the terms of the Original Note."
3  Going forward, Debtor must account for an increased interest rate. Debtor fails to do so in
4  its Amended Disclosure Statement projections.
5      Even without altering the interest rate structure, Debtor must account for the
6  possibility that the Prime Rate will increase. Debtor does not. For all its flaws, Debtor's
7  *previous* Disclosure Statement at least budgeted for the Prime Rate to increase at a
8  modest 0.25% per year. Debtor's current Disclosure Statement utterly fails to take into
9  account this likelihood.
10      Whether by natural market conditions or due to the extension of the Note's term
11  or the Note's original provisions, the interest rate on the Note will increase thereby
12  increasing Debtor's monthly payment amount. Debtor has failed to take into account this
13  inevitability in its Amended Disclosure Statement's projections. Debtor's projections are
14  incomplete and therefore do not provide adequate information for Secured Creditor and
15  other interested parties to make an informed decision regarding the Plan and feasibility.
16  
17  **B. THE POTENTIAL TENANCIES SHOULD NOT BE CALCULATED INTO DEBTOR'S PROJECTIONS**
18      Debtor's Amended Disclosure Statement, starting on page 9, states that Debtor
19  has a "national credit tenant" who wishes to remain anonymous but desires one unit at the
20  Fremont Center, and Debtor "anticipates a local florist" occupying a second unit. Debtor
21  assumes these leases are a done deal and calculates the projected rent from these units in
22  its calculations. Such projections make this a 'visionary scheme,' not founded in fact but
23  on Debtor's mere hopes. Debtor should have provided projections to show feasibility of
24  the Amended Chapter 11 Plan in circumstances where one or more of the leases do not
25  obtain. Such projections are necessary due to Debtor's history in this case: **Debtor has**
26  **not been able to lease any space since the start of this bankruptcy over one year ago.**
27  *Compare* Schedule G - Executory Contracts and Unexpired Leases [Docket entry # 45]
28  *with* Operating Report Number 14 For the Month Ending April 30, 2011 [Docket entry

#315], page 36 (listing same tenants (or their alter egos) at the Fremont Center). Debtor's 'just-trust-me-on-this' argument for the "national credit tenant" and florist tenant do not offer any evidence of Debtor's ability to actually lease the units, and may represent nothing more than high hopes and unfounded optimism. At a minimum, a redacted version of the alleged letter of intent from the "national credit tenant" should have been provided to Secured Creditor to help it determine the veracity of Debtor's projections and feasibility of the Amended Chapter 11 Plan.

Debtor's projections regarding the alleged new tenancies are also misleading because Debtor apparently has not set any amounts aside for tenant improvements. Neither the "national credit tenant" nor the florist will occupy unfinished space. Rather, Debtor will bear the cost of finishing the units to fit the needs of the tenants. These costs are not budgeted.[2] In March 2010, ACE Hardware approved plans for the lease of a significant portion of the Fremont Center's "end cap" space. "ACE [was] ready to move in. However, the Debtor need[ed] to finance certain tenant improvements in the space." Debtor's Opposition to American Continental Bank Motion for Stay Relief [Docket entry #274], page 2, lines 19-20. ACE Hardware is no longer the potential tenant; presumably **Debtor lost ACE Hardware as a potential tenant when Debtor could not afford tenant improvements**. The space to be occupied by ACE Hardware is now the space that Debtor intends to put the "national credit tenant" and florist–unfinished space for which Debtor must expend significant funds in order to lease the space. Debtor has not budgeted these costs, and may lose yet more potential tenancies due to its inability to afford tenant improvements. As with ACE Hardware, these potential tenancies may be lost if Debtor cannot finance tenant finishing. Debtor's projections therefore take into account all of the

---

[2] Debtor's projections include capital expenses for July 2011 of $28,000.00. However, no explanation of these expenses is provided, and Secured Creditor is unable to determine if the expenditure is for new tenants at the Lemon Creek or Fremont Centers; for normal, deferred maintenance; or for capital expenditures for the Lemon Creek Center, such as parking lot repair (the original Disclosure Statement (Exhibit 2 to Docket entry # 220) stated on page 17 that there was a subterranean creek at the Lemon Creek Center which causes "constant problems and damage to the parking lot").

upside of potential new tenants (*i.e.* increased rents) without accounting for new tenant costs or even demonstrating its ability to finance tenant improvements, thereby skewing the projections to make Debtor's Amended Chapter 11 Plan seem more feasible than it actually is.

The Amended Disclosure Statement sets forth fiscal projections that may be nothing more than high hopes and wishful thinking. By not grounding the projections in fact, with evidence therefor, interested parties cannot rely on the projections to assess the feasibility of the Debtor's Amended Chapter 11 Plan. Likewise the omission of costs relating to any new tenants misleads and distorts the projections. The Amended Disclosure Statement therefore fails to provide sufficient information for Secured Creditor and other impaired classes to make an informed decision regarding the Plan.

### III. THE AMENDED DISCLOSURE STATEMENT OFFERS NO BASIS FOR DISPUTING POST-PETITION ARREARS AND DOES NOT PROPOSE A CURE THEREOF

Debtor's Amended Disclosure Statement, page 23, states "ACB's stay relief motion filed on February 23, 2011 asserts $13,480.72 in post-petition accrued interest. Debtor disputes this calculation and believes there is $0.00 owed in post-petition accrued interest." 11 U.S.C. §1123 requires a plan to "provide adequate means for the plan's implementation, such as... curing or waiving any default." 11 U.S.C. §1123(a)(5)(G). The Amended Disclosure Statement offers no insight as to why Debtor disputes the figure from Secured Creditor's Motion for Relief. If Debtor believes itself current, it should say so. If Debtor instead believes Secured Creditor's calculations are incorrect, it should say so. Simply saying 'I don't think I owe you money' does nothing to resolve any possible controversy, and does not provide adequate information to help interested parties determine whether the Amended Chapter 11 Plan will be capable of confirmation.

### IV. CONCLUSION

The Amended Disclosure Statement should not be approved. The Amended Disclosure Statement should have been a document which provided insight into Debtor's Amended Chapter 11 Plan, allowing Secured Creditor and other interested parties to

gauge the feasibility of the proposed Amended Chapter 11 Plan, their treatment under the proposed Amended Chapter 11 Plan, and the basis for such treatment. Instead, Debtor offered an Amended Disclosure Statement built to obfuscate the feasibility of the proposed Amended Chapter 11 Plan; an Amended Disclosure Statement which skews projections which were already built on fancy, not grounded in fact. The Amended Disclosure Statement reveals that Secured Creditor is to receive 'adequate protection' for the term of the proposed Amended Chapter 11 Plan. There is no basis or rational for slighting Secured Creditor with such 'adequate protection,' rather than the amount due under the Original Note or even an amount properly calculated under the proposed New Note.

    The Plan provides that there will be a New Note superseding the existing note in certain particulars. The Plan needs to attach a copy of the form of the New Note so that ACB can have the opportunity to approve, challenge or revise the form. Among other things, the right of ACB to recover its attorney's fees must continue to be an integral part of the New Note.

    The Plan also provides that ACB "shall retain its lien." However, this is too imprecise. The Plan needs to say that the deed of trust will be superseded by an Amended Deed of Trust and attach a copy of the Amended Deed of Trust for the same reasons as set forth in the paragraph above. Among other things, the right of ACB to recover its attorney's fees must continue to be an integral part of the Amended Deed of Trust.

    Nor is there an explanation as to how it would be 'fair and reasonable' to extend the term of the Note over a year at an interest rate that is unattainable in the current economy. The complete opacity as to the rational behind Secured Creditor's treatment and the figures and amounts therefor is the exact opposite of the "adequate information"

///

///

///

///

1 | the Amended Disclosure Statement was supposed to provide. Therefore, Secured
2 | Creditor respectfully requests approval of the Amended Disclosure Statement be <u>denied</u>.

4 | DATED: June 19, 2011        EDWARD G. SCHLOSS

By: _____
EDWARD G. SCHLOSS
Attorney for Secured Creditor

## PROOF OF SERVICE

I, BETSY BLAND, certify that:

I am a resident of Ventura County, I am over the age of 18 and not a party to the within action; my business address is 3637 Motor Avenue, Suite 220, Los Angeles, California 90034.

On June 19, 2011, I served the within OBJECTIONS TO APPROVAL OF DEBTOR'S FIRST AMENDED DISCLOSURE STATEMENT on interested parties in this proceeding by placing a true and correct copy thereof enclosed in a sealed envelope with postage pre-paid in the United States Mail at Los Angeles, California addressed as follows:

| | |
|---|---|
| DEBTOR:<br>ORANGE GROVE SERVICE, INC<br>PO BOX 7398<br>LA VERNE, CA 91750 | COUNSEL FOR SWP LP:<br>JEFFREY A. KRIEGER<br>GREENBERG GLUSKER FIELDS CLAMAN<br>& MACHTINGER LLP<br>1900 AVENUE OF THE STARS, 21ST FLOOR<br>LOS ANGELES, CA 90067 |
| COUNSEL FOR DEBTOR:<br>JEROME S. COHEN<br>ELAINE V. NGUYEN<br>3731 WILSHIRE BLVD., SUITE 514<br>LOS ANGELES, CA 90010 | HONORABLE ELLEN CARROLL<br>U.S. BANKRUPTCY COURT<br>ROYBAL FEDERAL BUILDING<br>255 E. TEMPLE ST., SUITE 1634<br>LOS ANGELES, CA 90012-3332 |
| U.S. TRUSTEE:<br>UNITED STATES TRUSTEE (LA)<br>725 S. FIGUEROA ST., 26TH FLOOR<br>LOS ANGELES, CA 90017 | |

I declare that I am employed in the office of a member of the bar at whose direction the service was made.

I certify under penalty of perjury that the foregoing is true and correct.

Executed on June 19, 2011, at Los Angeles, California.

_Betsy Bland_
BETSY BLAND

\\Schloss2003\law files\OBJ\LA13ACB.orangegrove.disclstmt.OBJ2.wpd

11